**Wytheville.**

CHAPMAN, RECEIVER, v. VIRGINIA REAL ESTATE INVESTMENT CO.

JUNE 30, 1898.

Absent, Cardwell, J.

1. APPEAL AND ERROR—*Two Trials in Court Below—Reviewing the First Trial—What Rulings of Trial Court will not be Reviewed.*—In looking to the evidence and proceedings on the first trial of an action at law (which has been twice tried in the lower court) in order to ascertain whether error was committed in setting aside the verdict on the first trial, the rulings of the lower court against the plaintiff in admitting evidence, and in giving and refusing instructions, can have no effect, and will not be considered, where it appears that the verdict was in favor of the plaintiff, and gave him all that he demanded in his declaration. If all such rulings had been in favor of the plaintiff instead of against him, the verdict of the jury could not have been more favorable to him.

2. APPEAL AND ERROR—*Order Granting or Refusing a New Trial—Verdicts—Case at Bar.*—The verdict of a jury which has been approved by the judge who presided at the trial ought not to be set aside without the strongest reasons therefor. But if the trial judge is dissatisfied with the verdict, and grants a new trial, some latitude must be allowed to his discretion, especially where the propriety of its exercise is affirmed by a verdict on such new trial for the party to whom it was granted. In setting aside the verdict the trial court must, to some extent, pass upon the weight of the evidence before the jury, and a stronger case must be made in order to justify an appellate court in disturbing an order granting a new trial than one refusing it, because the refusal operates as a final adjudication of the rights of the parties, while the granting of the new trial simply invites further investigation, and affords an opportunity for showing the truth, without concluding either party. In the case at bar, the order setting aside the first verdict and granting a new trial ought not, under the evidence, to be disturbed; and the verdict and judgment on the second trial are supported by the evidence.

Error to a judgment of the Circuit Court of Tazewell county rendered September 11, 1897, in an action of debt wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Henry & Graham* and *Chapman & Gillespie,* for the plaintiff in error.

*May, May & Smith, J. H. Fulton,* and *Joseph S. Clark,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Upon the first trial of this case the jury rendered a verdict in favor of the plaintiff. Upon motion of the defendant it was set aside, and a new trial granted. On the second trial the verdict was in favor of the defendant. The motion of the plaintiff to set it aside was overruled, and judgment rendered thereon.

To the action of the court on both trials this writ of error was awarded.

By sec. 3484 of the Code, as amended by an act of the General Assembly approved March 3, 1892 (Acts 1891-2, ch. 609, p. 962), it is provided that where there have been two trials in the lower court the appellate court shall " look first to the evidence and proceedings on the first trial, and if it discovers that the court erred in setting aside the verdict on that trial, it shall set aside and annul all subsequent proceedings to said verdict, and enter judgment thereon."

The first question, therefore, to be considered is whether or not the court erred in setting aside the verdict of the jury upon the first trial.

Upon that question the exceptions of the plaintiff in error as to the several rulings of the court in admitting evidence and giving and refusing instructions can have no effect. If all the rulings complained of upon these points had been in favor of the plaintiff instead of against him, the jury could not have found for him a more favorable verdict than they did find, for they gave him all that he demanded in his declaration. *Ruffner* v. *Hill,* 31 West Va. 428; Barton's Law Pr., 724-5.

The action was brought by the plaintiff, who had been appointed a receiver in a creditors' suit against the West Graham Land and Improvement Company, to recover $7,650, alleged to be due from the defendant on account of unpaid assessments on stock in that company. The defendant denied its liability, claiming that it never was, by subscription or otherwise, a stockholder in the company.

The evidence of the plaintiff showed that the defendant was listed upon the books of the treasurer of the Land and Improvement Company as a subscriber for, or owner of, one hundred and fifty shares of its stock, at the price of $15,000; that it was credited with the payment of $5,000 and of $1,500, the amounts respectively of the first and second assessments on the stock; that J. R. Jordan, an agent of the defendant, was present at a meeting of the stockholders of the company claiming to have authority to represent the defendant, having a proxy, as some of the witnesses of the plaintiff state, signed, as they believed, by the treasurer of the defendant corporation, and under its seal; that he voted the one hundred and fifty shares of stock listed in the defendant's name; was elected a director, and also secretary and treasurer of the company, although he held no stock in it in his own right; that the $1,500 assessment credited to the defendant company was paid by a check signed by G. L. Estabrook, treasurer, and countersigned by Clarence M. Clark, president, and that the check was one of the stereotyped checks of the defendant according to the recollection and belief of the cashier of the bank which

cashed it, and who frequently handled the checks of the defendant; that Estabrook, who was secretary of the defendant corporation, asked for a statement of the condition of the Land and Improvement Company, which was furnished him; that the Land and Improvement Company had directed, at its meeting July 6, 1891, that each stockholder who would pay the assessment that day made should be allowed to draw a lot for each $1,000 of stock owned by him, and that pursuant to this arrangement fifteen lots were set apart to the defendant on the books of the Land and Improvement Company.

The plaintiff also read in evidence four letters of which the following are copies:

" Clarence M. Clark, President; Arthur C. Denniston, Vice-President; Geo. L. Estabrook, Jr., Sec'y and Treas.

VIRGINIA REAL ESTATE INVESTMENT COMPANY.

Office, Bullitt Building, Phila.      Telephone No., 2720.

PHILADELPHIA, PA., Feb. 4, 1892.

Mr. J. B. GREEVER,
          Graham, Va. :

Dear Sir,—Your favor enclosing duplicate receipt for our payment on account of West Graham Land and Improvement Company stock was duly received. I have delayed replying to your inquiry in regard to the exchange of the West Graham Land and Improvement Company stock for Graham Land and Improvement Company stock awaiting Mr. Denniston's return to Philadelphia.

He says now that there is certain other information which he wishes in regard to the matter before he gives a definite reply. Your former communication does not state the basis upon which you would propose to make an exchange.

Kindly let me hear from you in this regard, and oblige,
                    Yours truly,
                         G. L. ESTABROOK, JR."

Opinion.

"PHILADELPHIA, Jan. 8, 1895.

Mr. J. B. GREEVER,
        Graham, Va.:

Dear Sir,—I have yours of the 2d inst., and in reply, can only repeat the offer I made you when you were in Philadelphia, that if you wish to trade your Graham Land and Improvement Company stock dollar for dollar for the amount that has been paid in on our West Graham Land and Improvement Company stock—namely, $6,500—we are ready to make the trade. Otherwise, we will have to take the chances. Of course, if you will make this trade, it is understood that you will assume all liability on account of the one hundred and fifty shares which I represent.

Yours truly,<br>
G. L. ESTABROOK, JR."

"BULLITT BUILDING,
    PHILADELPHIA, Feb. 18, 1895.

Prof. J. B. GREEVER,
        Graham, Va.:

Dear Sir,—I am in receipt of yours of the 14th inst. Please reduce your proposition to figures, naming the amount of stock you are willing to exchange for the West Graham stock which I represent, the amount you will have left, and what houses and lots you are willing to take, and at what valuation. I will then see the parties interested in the West Graham stock and in the real estate, and see whether we can make any deal with them which should enable us to carry through such a deal as you suggest.

Yours truly,<br>
G. L. ESTABROOK, JR."

"PHILADELPHIA, March 8, 1895.

Mr. J. B. GREEVER,
        Graham, Va.:

Dear Sir,—Your favor without date was received on March

1st. The people I represent do not care to consider paying $2,000 cash for $2,500 of stock of the Graham Land and Improvement Company.

The only way in which we can make an exchange of the West Graham Land and Improvement Company's stock and the Graham Land and Improvement stock is dollar for dollar on the amount paid in. If you care to make the exchange in this way, I will see my parties, and I have no doubt but what I can get them to make the exchange, although it looks as though we are giving away something that may become valuable some day for that which does not have any great promise of having any value whatever.

Yours truly,

G. L. ESTABROOK, JR."

The plaintiff also proved some other circumstances of minor importance tending to show that the defendant was a shareholder in the Land and Improvement Company.

The defendant, upon the cross-examination of the plaintiff's witnesses, showed how its name had been placed upon the books of the treasurer as the holder or owner of the 150 shares of stock. The treasurer stated that he had placed its name upon his books by direction of the president of the company, and the president proved that the shares of stock charged to the defendant had been subscribed for by E. J. Collins; that his name was upon the list of stockholders of the Land and Improvement Company; that when Collins subscribed for the stock, he (witness) did not know, but thought it was for the defendant, and that he understood Collins to so state at first; that Collins had paid the $5,000 credited by the treasurer of the defendant, and that after both assessments had been paid and credited to the defendant a certificate for the stock was issued in the name of Collins, though it does not appear to whom it was delivered.

The defendant read in evidence the depositions of its president, secretary, and treasurer, and also of several of its direct-

ors. The president testified that he had been the president and a manager of, and a director in, the company since its organization; that he had not subscribed for stock in the Land and Improvement Company, or authorized any such subscription to be made; neither had he purchased nor authorized any purchase to be made of the stock, or of any interest in the stock, of that company; that, as president of the defendant company, he never signed any check to pay any assessment on any stock of the Land and Improvement Company so far as he remembered, and that if he had done so he thought he would undoubtedly have remembered it; that J. R. Jordan was the agent of the defendant to look after its property, collect rents, find tenants, and to report upon the general condition of its property; that investments for the defendant were made by the president, vice-president, and board of directors, and sometimes by the managers acting for the board, but that Jordan had no authority to make any subscription or investment for it; that E. J. Collins was never the agent of, nor did he have any connection with, the defendant company.

Geo. L. Estabrook, Jr., testified that he had been secretary and treasurer of the defendant company since its organization; that he had never heard of any subscription to or purchase of the stock of the Land and Improvement Company by the defendant, and that it had never owned or claimed to own any such stock; that all disbursements of the defendant were made by him as treasurer, except a few checks which were signed by the president; that he was entirely familiar with all the checks that had been signed by the president, and that no check was ever given by them for any payment for stock in the Land and Improvement Company, and that all disbursements for permanent investments were made by checks; that he never made any payment to E. J. Collins for any interest of any kind in the Land and Improvement Company, and that he (Collins) never was the agent of, nor did he ever have any connection with, the defendant; that the charter of the de-

fendant was lodged with the Secretary of the' Commonwealth on the 16th day of May, 1890, and the first meeting of its incorporators and stockholders held on the 9th day of June following.

E. W. Clark testified that he had been a director in the defendant company since its organization; that he, as director, had made no subscription for it in the stock of the Land and Improvement Company, and that he had no recollection of any ownership or claim of ownership by the defendant company in the stock of the Land and Improvement Company.

A. C. Denniston stated that he had been vice-president and director in the defendant company since its organization; that he had made no subscription for his company in the stock of the Land and Improvement Company, and had never authorized any one else to do so, and that the defendant has not, and never had, any interest in the stock of the Land and Improvement Company; that J. R. Jordan had nothing to do with investing the funds of the defendant, and never made any such investments; that all investments were made by the president or vice-president of the company, and aftewards sanctioned by the board of directors, or made in the first instance under the authority of the board; and that E. J. Collins never had any connection with the defendant.

Joseph S. Clark testified that he was named as one of the directors in the charter; that C. M. Clark, A. C. Denniston, and himself were the managers of the defendant company, and that it never did own, or make any payment upon, or claim any interest in, any stock of the Land and Improvement Company, to his knowledge, and that if any such thing had been true he certainly would have known it.

The defendant proved by the secretary of the Land and Improvement Company that the fifteen lots assigned to the defendant company were made without its authority, and that so far as he knew, the defendant had never applied for any conveyance of the lots. It was also proved by the clerk of the

County Court of Tazewell county that there were no conveyances of record from the West Graham Land and Improvement Company to the defendant.

The defendant also introduced certain letters which were produced by the president of the Land and Improvement Company at the defendant's request, of which the following are copies:

"Clarence M. Clark, President; Arthur C. Denniston, Vice-President; Geo. L. Estabrook, Jr., Sec'y and Treas.

SOUTHWEST VIRGINIA REAL ESTATE INVESTMENT COMPANY,
Bullitt Building, Philadelphia.

Telephone No. 2720.

PHILADELPHIA, October 10, 1891.

Mr. J. B. GREEVER, President,
Graham, Va. :

Dear Sir,—Referring to your favor of the 21st of August, addressed to Mr. E. J. Collins, I beg to enclose herewith check and voucher to the West Graham Land and Improvement Company for $1,500, being payment of 10 per cent. on account of our subscription to $15,000 of the capital stock of the above company. Please receipt and return voucher, and also send us your usual form of instalment receipt.

I note from the latter part of the letter above referred to that we are entitled to draw a medium lot for each $1,000 of stock. We have written to Mr. James L. Hamill, of Graham, to attend to this matter for us, and I will be obliged if you will advise him when the drawing will take place.

Yours truly,
G. L. ESTABROOK, JR,
Treasurer."

"Clarence M. Clark, President; Arthur C. Denniston, Vice-President; Geo. L. Estabrook, Jr., Sec'y and Treas.

SOUTHWEST VIRGINIA REAL ESTATE INVESTMENT COMPANY,
Bullitt Building, Philadelphia.

PHILADELPHIA, October 22, 1891.

Mr. J. B. GREEVER, President,
    West Graham Land & Imp. Co.,
        Graham, Va. :

Dear Sir,—A few days ago we made payment of 10 per cent. on account of our subscription to 150 shares of the capital stock of your company.   At the time of payment we sent you a voucher, which you receipted and returned.   We would also like to have your usual form of instalment receipt showing this payment.   Will you kindly have this forwarded to us and oblige,

Yours truly,
                G. L. ESTABROOK, JR.,
                        Treasurer."

" Clarence M. Clark, President;  Arthur C. Denniston, Vice-President;  Geo. L. Estabrook, Sec'y and Treas.

SOUTHWEST VIRGINIA REAL ESTATE INVESTMENT COMPANY,
Bullitt Building, Philadelphia.

Telephone 2720.

PHILADELPHIA, November 30, 1891.

Mr. J. B. GREEVER,
        Graham, Va. :

Dear Sir,—I have your favor of the 26th inst.   In reply I beg to say that I have written to Mr. Hamill asking him to obtain for us certain information.   As soon as I have this information we can decide whether we wish to make the exchange as outlined in your letter.

Yours truly,
                G. L. ESTABROOK, JR."

" Clarence M. Clark, President; Arthur C. Denniston, Vice-President; Geo. L. Estabrook, Sec'y and Treas.

SOUTHWEST VIRGINIA REAL ESTATE AND INVESTMENT COMPANY,
            Bullitt Building, Philadelphia.

Telephone 2720.

                        PHILADELPHIA, April 6, 1892.

Mr. J. B. GREEVER,
            Graham, Va. :

Dear Sir,—I have not received the copy of the balance sheet of the West Graham Land and Improvement Company. Can you not prevail on the treasurer to send this to me pretty soon ?

                    Yours truly,
                        G. L. ESTABROOK, JR.,
                                Treasurer."


" Clarence M. Clark, President; Arthur C. Denniston, Vice-President; Geo. L. Estabrook, Sec'y and Treas.

SOUTHWEST VIRGINIA REAL ESTATE INVESTMENT COMPANY,
            Bullitt Building, Philadelphia.

Telephone 2720.

    Inquiring regarding deeds West Graham Company.

                        PHILADELPHIA, October 5, 1892.

Mr. J. B. GREEVER,
            Graham, Va. :

Dear Sir,—Will you kindly advise me whether the deeds for the lots of the property of the West Graham Land and Improvement Company which were drawn by our company are ready for delivery ? If not ready at this time, when will they be ?

                Yours truly,
                        G. L. ESTABROOK, JR.,
                                Treasurer."

It also introduced in evidence an act of the General Assembly approved January 24, 1890, amending the charter of the Southwest Virginia Real Estate Investment Company, by which it was authorized to subscribe for, guarantee, or acquire the stock and bonds of any corporation.

The question for us to determine is whether the evidence in the case is of such a character as to make it the duty of this court to set aside the action of the Circuit Court granting a new trial, and to enter judgment upon the first verdict.

There is always a fair presumption that the verdict of the jury is correct, and when the judge who presides at the trial, who has heard all the evidence, witnessed all the proceedings, and the manner of conducting the cause before the jury, is satisfied with the verdict and refuses to set it aside, an appellate court which cannot have an equal opportunity for forming a just judgment ought not to interfere without the strongest reasons for doing so. "On the other hand," as was said by Judge Baldwin in *Patteson* v. *Ford*, 2 Gratt. 19, 25, "when the judge" [who presided at the trial] "is dissatisfied with the verdict and grants a new trial, some latitude must be allowed to his discretion; especially where the propriety of its exercise is affirmed by a verdict on such new trial for the party to whom it was granted." In setting aside the verdict the trial court must to some extent pass upon the weight of the evidence before the jury; and a stronger case must be made in order to justify an appellate court in disturbing an order granting a new trial, than where it has been refused. The reason usually assigned for this rule is that the refusal to grant a new trial operates as a final adjudication of the rights of the parties, while the granting of the new trial simply invites further investigation, and affords an opportunity for showing the truth without concluding either party. Barton's Law Pr., 725–6; *Ruffner* v. *Hill*, 31 West Va. 428, 431–2.

The uncontradicted evidence in the cause shows that the 150 shares of stock charged to the defendant upon the books of the

treasurer of the Land and Improvement Company were sub-
scribed for by E. J. Collins; that the first assessment of $5,000
was paid by him; that a certificate for the stock was issued in
his name; that he never was the agent of or had any connec-
tion with the defendant; that there was no authority for
charging the defendant with the Collins stock, or crediting it
with the $5,000 paid by Collins, upon the books of the treas-
urer of the Land and Improvement Company; that the de-
fendant did not subscribe for any stock in that company, nor
authorize any one else to do so for it; that some time prior to
the organization of the Real Estate Investment Company (the
defendant), another corporation known as the Southwest
Virginia Real Estate and Investment Company was chartered;
that both companies had the same president, the same vice-
president, and the same secretary and treasurer, with offices in
the same building.

It is clear from the letters written to the president of the
Land and Improvement Company by G. L. Estabrook, Jr.,
who was secretary and treasurer of both the defendant com-
pany and of the Southwest Virginia Real Estate and Invest-
ment Company, that one or the other of the companies was
the owner of one hundred and fifty shares of stock in the
Land and Improvement Company. The letters themselves do
not clearly show which of the Investment Companies owned
the stock, but when read in the light of the evidence of the
officers and directors of the defendant company, that it had
never subscribed for or purchased any stock in the Land and
Improvement Company, or authorized anyone else to do so
for it; that it had never paid anything on account of stock in
that company, and that E. J. Collins, who subscribed for the
stock, was not its agent, and never had any connection with it,
it can scarcely be doubted that the Southwest Virginia Real
Estate and Investment Company, and not the defendant, was
the owner of the one hundred and fifty shares of stock.

There is very little conflict in the evidence. None of the

plaintiff's witnesses testified that the defendant had subscribed for or purchased the one hundred and fifty shares of stock. His evidence upon that question is made up of circumstances and facts which, for the most part, the defendant's evidence explains, but does not contradict.

We are, therefore, of opinion that the evidence upon the first trial is not of such a character as that this court ought to reverse the action of the Circuit Court in setting aside the verdict, and granting a new trial.

We are further of opinion (and plaintiff's counsel seem to so concede) that there was no error in the proceedings upon the second trial to the prejudice of the plaintiff.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*