## Wytheville.

Citizens Bank of Norfolk, Receiver, v. Taylor & Co.

June 15, 1905.

Absent, Cardwell and Whittle, JJ.

1. Contracts—*Construction—Practical Construction of Parties.*—Manufacturers of ice having agreed to manufacture and deliver ice *at* their platforms during several months, and the purchaser, when sued for failure to accept and remove the ice as manufactured, claiming that he was only bound to accept the ice delivered *on* the outer platform, the court will adopt that construction of the contract placed upon it by the parties themselves during the period when there was no controversy on the subject, and which is a reasonable construction, to-wit, a delivery at the platform or inner storage room.

2. Appeal and Error—*Three Trials Below—Demurrer to Evidence.*—When there have been three trials of a case, and a verdict for the plaintiff in each of the first two has been set aside because contrary to the law and the evidence, and exceptions duly taken, and on the third trial there is a demurrer to the evidence by the defendant which is sustained, on a writ of error by this court on the application of the plaintiff, the records of the first and second trials are before this court for review, but they are not to be considered as on a demurrer to the evidence.

3. New Trial—*Three Trials Below—Demurrer to Evidence—Reversal—On What Verdict Judgment to be Entered.*—Where there has been three successive verdicts for the plaintiff, each for a less sum than the one which preceded it, and the first two have been set aside by the trial court as contrary to the evidence, and the third is rendered on a demurrer to the evidence by the defendant, which demurrer the trial court sustained, this court, upon reversal, will enter up judgment on the last verdict, as some latitude must be allowed to the discretion of the trial court, especially when the propriety of its exercise is affirmed by a verdict on the new trial for the party to whom it was granted, or the verdict, though for the same party, is for a substantially less sum.

4. Demurrer to Evidence—*Rule of Decision.*—Where, upon a demurrer to the evidence, the evidence is such that a jury might have found a verdict for the demurree, the court must grant judgment in his favor.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*White, Tunstall & Thom* and *J. W. Wilcox,* for the plaintiff in error.

*Loyall & Taylor* and *James E. Heath,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The Citizens Bank of Norfolk, receiver of the Norfolk Ice Company, brought its action in assumpsit against Taylor and Company upon the following contract:

The Citizens Bank of Norfolk, receiver, "hereby agrees to sell to Taylor and Company, and Taylor and Company hereby agrees to purchase from the said receiver, sixty tons of canned ice, merchantable quality, and weighing two hundred and three hundred pounds, full weight, each can or piece, during each and every day of the month of May, 1903, and the entire output of both of the plants now in the hands of the receiver, and known as 'Hygeia' and 'Citizens' plants, during the months of June, July, August, and September, 1903; the said entire output not to exceed one hundred and ten tons per day; and forty tons during each and every day of the months of October and November, 1903; and sixty tons during each and every day of the month of April, 1904; the said ice of the quality and quantity aforesaid to be delivered to the said Taylor & Company, or on their orders, at the platforms of the said several plants operated by the said receiver; the said Taylor & Company hereby agreeing to pay to the said receiver for the said ice at

the rate of $2.20 per ton of two thousand pounds; the said purchase price to be settled for in cash on or before the tenth day of the month next succeeding the delivery thereof, during the pendency of this contract.

"It is further understood and agreed that the said receiver shall keep on hand and refrigerated at the 'Citizens' plant an amount of ice not exceeding three hundred and fifty tons at any one time, unless otherwise agreed upon in writing by both parties hereto.

"It is further understood and agreed that during the continuance of the contract now existing between the said receiver and the Fruit Growers Express, the said receiver is to reserve from the amount of ice manufactured by it at the said plants whatever quantity of ice may be necessary to fill the said contract, which said contract ends the 30th day of June, 1903."

The defendant pleaded the general issue, and certain special pleas, and the jury at the first trial found a verdict for the plaintiff for $2,000, which was set aside by the court.    At the second trial there was a verdict for $1,500, which was set aside by the court; and at the third trial there was a verdict for the plaintiff for $1,288, subject to a demurrer to the evidence, upon which the court gave judgment for the defendant.    Upon each of these trials exceptions to the ruling were taken by the plaintiff in error, the record preserved, and all of them are now before this court for review.    The question for us to determine is, shall the judgment be affirmed, or, if it is to be reversed, upon which verdict shall judgment be rendered in favor of the plaintiff in error?

It is not altogether clear from the record upon what ground the court acted in setting aside the first and second verdicts; but looking to the record of those trials and to the subsequent action of the court in entering judgment for the defendant upon the demurrer to the evidence, it would seem that the court was of opinion that the defendant, having taken all the ice manufactured by the plaintiff during the month of June, 1903, had

discharged its duty; while the contention of the plaintiff in error is, that, though the defendant took and paid for its actual output during that period, it did not take the quantity which it was ready to manufacture and deliver up to the limit of 110 tons prescribed by the contract, and that it was hindered in its manufacture of ice by the conduct of the defendant. The contract calls for canned ice, each block weighing "two hundred and three hundred pounds," full weight, the defendant contracting to take the entire output of both plants operated by the receiver, with the provision that this output was not to exceed 110 tons per day, "the said ice of the quality and quantity aforesaid to be delivered to the said Taylor & Co., or on their orders, at the platforms of the several plants operated by the said receiver."

During the month of May the sixty tons provided for in the contract for that month was delivered and received in accordance with the contract. On June 4, 1903, Nichols, the manager of the ice plants, addressed Taylor & Co. the following note:

"In accordance with terms of contract you were to take the full capacity of both plants during the months of June, July, August, and September. We desire to inform you that we are prepared to operate in full from June 1st; that we now have, subject to your orders, on storage, 271 tons of ice from last month's supply, and with the daily increase the amount of your storage capacity with us will soon have reached its limit. Enclosed please find bill for 220 tons 290/2000 lbs., due you on May purchase, now on storage and held subject to your order."

The platforms of the ice plants were uncovered, and ice placed upon them, under the influence of the sun, quickly deteriorated—not only lost its weight by melting so as to fall below the standard weight required by the contract, but its quality rapidly became so impaired as to render it unmarketable. The platforms, too, had a very limited capacity, but adjacent to and communicating with them were store-rooms in which a considerable amount of ice could be kept, and it was the custom of the

ice company to place the ice as manufactured in the store-rooms and transfer it to the platforms when Taylor & Co. were ready to receive it. This course, or custom, was pursued during the month of May without protest or objection, so far as the record discloses. It seems to have imposed no inconvenience upon Taylor & Co., but to have been in their interest as well as in that of the plaintiff in error. Indeed, it would have subserved the convenience of plaintiff in error to have placed the ice, as far as it could be done, on the platforms and required the defendant in error to take it or leave it at its peril.

The contention of defendant in error is, that it was the duty of plaintiff in error to go on and manufacture the ice, place it on the platforms, and that it would be for the defendant in error to take it or not, as it saw fit, but the condition precedent having been performed, it concedes that it would have been liable for the price. That seems to be an unreasonable construction of the contract, looking to its subject matter. It was a continuing contract with reference to a subject of a perishable character, and a reasonable construction, and that which the parties themselves had placed upon it, and that under which they had lived during the month of May, is that which should prevail. This was evidently the view taken of the case by the juries, for in three successive trials they found verdicts for the plaintiff.

Although the records of the first and second trials are before us for review to ascertain if any errors have been committed on such trials, they are not to be considered as upon a demurrer to the evidence. But some latitude must be allowed to the discretion of the trial court in setting aside a verdict as contrary to the evidence, and this is especially true where, on the new trial, a verdict is found for the opposite party, or the amount of the verdict is materially diminished. *Chapman* v. *Va. Real Estate Investment Co.*, 96 Va. 177, 31 S. E. 74; *Marshall* v. *Valley R. Co.*, 99 Va. 798, 34 S. E. 455.

While in each case there was a verdict for the plaintiff, that verdict was in each instance somewhat diminished, being reduced from $2,000 upon the first trial to $1,288 upon the

final trial.    Upon the last trial, however, the case stood strictly upon a demurrer to the evidence, and the evidence was sufficient to go to the jury.    The whole situation was before the jury. They visited the locality; they heard and saw the witnesses; they knew the course of dealing that prevailed; and we are of opinion that the evidence was sufficient to support their verdict, and the court erred in not rendering a judgment upon the demurrer to the evidence in favor of the plaintiff for the sum of $1,288.

For these reasons we are of opinion that the judgment should be reversed, and this court will enter such judgment as the Circuit Court should have rendered.   ·

*Reversed.*