## Richmond

### CARDWELL V. NORFOLK AND WESTERN RAILWAY COMPANY.

#### March 16, 1913.

1. NEW TRIALS—*Verdict Contrary to Evidence—Discretion of Trial Court.*—While greater latitude is allowed the trial court in granting than in refusing a new trial, on the ground that the verdict is contrary to the evidence, still the verdict of a jury is entitled to great respect, and it is error to set it aside when sustained by the evidence, as in the case at bar.

2. APPEAL AND ERROR—*Two Trials Below—Proceedings on First Trial—Verdict Sustained by Evidence.*—Where there have been two trials in the court below and this court is considering the proceedings on the first trial, it is unnecessary to decide whether the evidence given on the first trial shall be considered by this court as on a demurrer to the evidence or otherwise when, in any view of the evidence, it sustains the verdict. In the case at bar it is also unnecessary to consider the question whether or not there is any conflict in the decisions of this court as to the manner in which the evidence on the first trial is to be considered by this court under the provisions of section 3484 of the Code.

Error to a judgment of the Circuit Court of Campbell county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Volney E. Howard, Frank Nelson* and *Thomas J. Williams,* for the plaintiff in error.

*F. S. Kirkpatrick, Marshall McCormick* and *Theodore W. Reath,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by William L. Cardwell against the Norfolk and Western Railway Company to recover damages for personal injuries sustained by the plaintiff, which he alleges were caused by the negligence of the defendant company.

At the first trial of the case the jury rendered a verdict in favor of the plaintiff for $5,000, which, upon the motion of the defendant, was set aside as being "plainly contrary to the weight of evidence." On the second trial, neither the plaintiff nor the defendant offering any evidence, a verdict was returned by the jury for the defendant, upon which the court entered judgment, and the case is before us for review upon a writ of error awarded the plaintiff.

There are no exceptions made a part of the record with respect to instructions given or refused by the trial court, or to the admission or rejection of evidence, so that the only question presented is the propriety of the circuit court's action in setting aside the first verdict.

It appears from the record that the plaintiff in error, Cardwell, was an employee of the defendant in error in the capacity of laborer, and was a member of a gang of laborers employed in the construction and repair of the track of the defendant in error. The headquarters of this force was located in certain camp cars, at a point in Campbell county, and the place of work extended over a considerable stretch of track, and the plaintiff in error and his co-laborers were each day taken to and from their place of work upon hand cars furnished by the defendant in error. On the day of the injuries of which plaintiff in error complains, he and his co-laborers had gone out on hand cars after dinner to work, and at the end of the day these hand cars were gotten in readiness to carry the force back to camp, and plaintiff in error took or was assigned

to a place on the last car, which was in charge of one Robert Wimbush.  These hand cars are about eight feet square, and are operated by two lever bars, one of them about one and a half feet from the front of the car, and the other about one and a half feet from the rear of the car, the lever bars being about four feet long; and the men are distributed on the car so that some of them take hold of the lever bar at the front and others take hold of the same bar between the two levers.  Another set go to the rear of the car and hold on to the rear lever bar. The men press the lever bar down, swaying the body and going down with it, and when it comes up, they return to an erect position, and then push it down again, and thus propel the car.

The rule with respect to the operation of these cars required the cars to run apart from each other the distance between two telegraph poles, or about 170 feet; and on the occasion of the accident to plaintiff in error the cars started out on their return trip to camp with the car on which he was riding in the rear, with Wimbush in charge; and in the course of the trip and when Wimbush saw that his car was getting too close to the car ahead of him, he checked the speed of his car so as to increase the distance between it and the car next in front by putting his foot on the brake; and by the car being thus checked plaintiff in error was thrown off upon the track in front of the car, which ran upon his body and thereby inflicted upon him serious and permanent injuries.

This action to recover for said injuries is grounded (1) on the negligence of defendant in error in furnishing a defective hand car, maintained and operated by it, and upon which plaintiff in error and other employees were being carried from their place of work to the camp at the time and on the occasion that plaintiff in error sustained his injuries; and (2) upon the negligence of the employee

and agent (Wimbush) of the defendant in error in the manner of operating the car at the time, and by reason whereof plaintiff in error was thrown from the car and the car run upon him.

The defense to the action is (1) that the defendant in error had used ordinary care to furnish, and as a matter of fact had furnished, to the plaintiff in error a reasonably safe hand car on which he was to be transported to and from his work; and (2) assuming that defendant in error had been negligent in failure to use ordinary care to furnish a reasonably safe hand car for the transportation of plaintiff in error to and from his work, the proximate cause of his injuries was his lack of ordinary care, in that he failed to hold on as the other men held on to the lever, and to brace himself properly in case it should become necessary to check the speed of the car by the use of the brake.

The defendant in error undertook to prove, and did introduce witnesses to prove, that it had no car in service on the day of the injury to plaintiff in error which was in the condition claimed by him, but that the fact was that he, when injured, was riding on a newly painted hand car which was in perfect condition in every respect; but this evidence not only created a conflict with the evidence of plaintiff in error, thus presenting a pure question of fact peculiarly within the province of the jury to decide, but the evidence for the plaintiff in error amply sustained his contention as to what car he was on when injured and as to its condition.

The remaining question in the case is whether or not the trial court should have set aside the verdict of the jury at the first trial because of the contributory negligence of the plaintiff in error concurring with the negligence of the defendant in error in causing his injuries.

It is earnestly pressed upon us in the petition for this writ of error and in the oral argument, that this question

was purely a question of fact determinable, under proper instructions from the court, alone by the jury, and that it was not within the authority of the trial court to interfere with their finding thereon. In support of this contention the decision of this court in *Morien* v. *Norfolk & A. T. Co.,* 102 Va. 622, 46 S. E. 907, is greatly relied on.

On the other hand, it is argued on behalf of the defendant in error, with equal earnestness and ability, that the rule in Virginia is that the trial court, in ruling upon a motion to set aside a verdict of a jury in a civil action, must to some extent pass on the weight of the evidence; and that as this motion is addressed to the sound discretion of the judge, the determination of the question whether or not there has been a proper exercise of that discretion rests upon a wholly different set of considerations from those which govern the appellate court, particularly so where the trial judge, in the exercise of his discretion, has granted the new trial. In other words, the contention is that if the trial judge had refused a new trial and the defendant company had applied for and obtained a writ of error, this court would treat the evidence as on a demurrer thereto, but the rule is different where the trial judge has granted the new trial. In the latter instance, it is claimed that "the plaintiff in error comes to this court not on a demurrer to the evidence by him, but nearly so"; and further, "the trial judge should set aside the verdict (1) where it is not supported by the evidence; (2) where the verdict is founded on mere inferences; (3) when the court can see that the verdict is based on wrong inferences; (4) when the verdict is plainly against the *weight* of the evidence." As supporting these contentions a number of cases decided by this court prior to the enactment of the statute now section 3484 of the Code of 1904, and others decided since, among them *Chapman* v. *Va. Real Est. Co.,* 96 Va. 177, 31 S. E. 74; *Mur-*

*shall's Admr.* v. *Valley R. R. Co.,* 97 Va. 653, 34 S. E. 445; *C. & O. Ry. Co.* v. *Anderson,* 95 Va. 650, 25 S. E. 947, are cited.

It. is not necessary to review the cases decided before the enactment of the statute, section 3484, Code of 1904. That statute has been clearly interpreted and incontrovertibly stated by this court in a number of cases decided since its enactment, both before and since its amendment to its present form and language, including the cases above named.

The rules governing the granting of new trials, established in *Grayson's Case,* 6 Gratt. (47 Va.) 712, and in *Blosser* v. *Harshbarger,* 21 Gratt. (62 Va.) 214, adopted and reaffirmed in numerous cases following, have not been changed by the statute nor by the decisions of this court interpreting the statute. There appeared, however, to have been several rules as applied to different classes of cases, and it was the purpose of the revisors of the Code of 1887 to have one uniform rule of decision in all the classes of cases, and it was determined that in considering a case upon a writ of error, the appellate court should consider it as upon a demurrer thereto by the plaintiff in error, and accordingly the statute so providing was inserted in the Code of 1887 as section 3484; but it being afterwards supposed that this rule operated harshly on the excepting party where there had been two trials, the statute was amended by adding thereto the following words: "except when there have been two trials in the lower court, in which case the rule of decision shall be for the appellate court to look first to the evidence and proceedings on the first trial, and if it discovers that the court erred in setting aside the verdict on that trial, it shall set aside and annul all proceedings subsequent to said verdict and enter judgment thereon." See notes at p. 1862, Code 1904.

It would, indeed, be a futile and idle thing for the law to give to a court supervisory authority over the proceed-

ings and the manner of conducting a cause before the jury, and the right to set aside the verdict of the jury therein because contrary to the evidence, unless the judge vested with such power could consider to some extent at least the evidence in the cause; and it would be equally as futile and idle to say that when there have been two trials of a cause in the lower court, the rule of decision shall be for the appellate court to look first to the evidence and proceedings on the first trial, and if it discloses that the court erred in setting aside the verdict on that trial it shall set aside and annul all subsequent proceedings, etc.; yet the appellate court could not look to the evidence except under the rule requiring its consideration as upon a demurrer thereto. The statute says that the appellate court shall look to the evidence, etc., in determining the propriety of the trial court's ruling setting aside the first verdict, and prescribes no rule limiting the extent to which the evidence is to be looked to.

But as said by Baldwin, J., in *Patterson* v. *Ford,* 2 Gratt. (43 Va.) 18, "much respect is due to the opinion of the jury whose province it is to weigh conflicting evidence, to scan the credit of witnesses, to estimate the force of circumstances and probabilities and presumptions, and to canvass intention and motives. This is so evident that the courts habitually defer to the conclusions of juries upon matters of fact, though opposed to their own; and hence the familiar rule not to disturb a verdict unless in a case of plain deviation from the evidence." In other words, the court should not set aside the verdict of a jury unless it is plainly against the evidence, or is without evidence to support it, which occurs where there has been no proof whatever of a material fact, or not sufficient evidence of the fact or facts in issue. Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a

new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such a case the verdict should be plainly insufficient to support the finding of the jury. *Blosser* v. *Harshbarger, supra.*

This court has repeatedly said, and in cases which had to be considered in the light of the rule prescribed in the statute (sec. 3484, *supra*) that in setting aside, or in defusing to set aside, a verdict the trial court must to some extent pass upon the weight of the evidence before the jury; and has recognized and repeatedly acted upon the rule, that in considering the propriety of the trial court's ruling upon a motion to set aside the verdict of the jury because it is contrary to the evidence, or is without evidence to support it, this court will look, to some extent, to the weight of the evidence adduced at the trial.

No attempt has been made, so far as we are advised, by the courts or the law writers to formulate a rule defining the limit to which the trial court or the appellate court may go in reviewing the evidence to ascertain and to determine whether or not a verdict of a jury is plainly against the evidence or without evidence to support it. Indeed, it would be a task difficult, if not impossible of performance, to prescribe with circumstantial precision the extent to which the trial court or the appellate court may properly examine the evidence with the view of determining whether or not the verdict of the jury thereon should be disturbed, but the authorities agree that the verdict of the jury is entitled to great respect and should not be disturbed unless plainly against the evidence or without evidence supporting it; and also that where the inferences to be drawn from the evidence are not certain and incontrovertible, it is a question for the jury as to what inferences are to be drawn from the evidence, and one not to be determined by the court. It is also well recognized

by this court, and the courts in other jurisdictions, that greater latitude is allowed the trial court in granting than in refusing new trials, and the reason for this rule is explained in the opinion by Buchanan, J., in *Chapman* v. *Real Est. Co., supra,* as follows:

"In setting aside the verdict, the trial court must, to some extent, pass upon the weight of the evidence before the jury, and a stronger case must be made in order to justify an appellate court in disturbing an order granting a new trial than where it has been refused. The reason usually assigned for this rule is that the refusal to grant a new trial operates as a final adjudication of the rights of the parties, while the granting of the new trial simply invites further investigation and affords an opportunity for showing the truth without concluding either party."

In that case, as in this, there had been two trials, at the first of which a verdict for the plaintiff was rendered, which the court set aside, and at the second, no evidence being introduced by either party, the verdict was for the defendant, upon which the trial court entered judgment; and in the opinion of this court, reviewing the case upon writ of error, the evidence is set out and discussed at considerable length, and the conclusion reached was that the order of the trial court setting aside the first verdict and granting a new trial ought not, under the evidence, to be disturbed.

In *Marshall's Admr.* v. *Valley R. Co., supra,* there had also been two trials, the verdict in the first being for the plaintiff, which the trial court set aside, and at the second, no evidence being introduced, the verdict and the judgment thereon was for the defendant; and in reviewing the case the opinion of this court by Keith, P., discusses the evidence at considerable length, especially that part of it relied on as proving contributory negligence on the part of plaintiff in error's decedent, and barring the right of

recovery of damages for the death of Marshall, the conclusion reached being that the trial court erred in its ruling setting aside the first verdict and accordingly the judgment so ruling, as well as that for the defendant on the second trial, was reversed and judgment entered here for the plaintiff in error upon the first verdict. In the opinion it is said: "As the trial court set the verdict aside, this case is not before us as upon a demurrer to the evidence, but as was said in *Chapman* v. *Real Estate Co.*, 96 Va. 177, 31 S. E. 74, 'if the trial judge is dissatisfied with the verdict and grants a new trial, some latitude must be allowed to his discretion, especially where the propriety of its exercise is affirmed by a verdict on such new trial for the party to whom it was granted, as was the case here. The verdict of the jury, however, is entitled to great respect, and it should not be disturbed even by the trial court, unless plainly against the weight of evidence.' "

And again: "We cannot say that contributory negligence on the part of the deceased is a certain and incontrovertible inference from the evidence. Whether or not that inference is to be drawn from the facts proved is a question about which reasonable men may fairly differ, and when that is the case an issue is presented for the determination of the jury, and the verdict on the first trial should not have been disturbed."

The opinion by Burks, J., in *Blair & Hoge* v. *Wilson*, 28 Gratt. (69 Va.) 165, says: "Every reasonable presumption should be made in support of a verdict fairly rendered, and according to the long established, well-settled rule by this court, such a verdict cannot be set aside as against the evidence, unless there is a plain deviation—unless the evidence is plainly insufficient to warrant the finding."

These cases, as well as many others which might be cited if deemed necessary, recognize that the trial court has

the discretion and authority to set aside a verdict when it appears to be "plainly against the weight of the evidence," meaning "palpably erroneous" or "without sufficient evidence," or "against evidence," practically synonymous terms alternately used in the decided cases; and while the court says in *Morien* v. *N. & A. Terminal Co., supra,* that the weight of the evidence is wholly with the jury, it was not meant and could not, under the facts of that case, have been intended to mean that the cases, including those we have cited, approving the doctrine that the court must as a matter of necessity pass, to some extent at least, upon the weight of the evidence, were overruled or impaired in their authoritative force. The language used in the opinion in that case, as in all cases, must be read and interpreted in the light of the facts of the case in judgment.

The opinion by Marshall, C. J., in *Cohens* v. *Virginia,* 6 Wheat, at p. 399, 5 L. Ed. 257, says: "It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

In *Morien* v. *N. & A. T. Co., supra,* Mrs. Morien alleged in her declaration that while she as a passenger on one of the defendant's cars was in the act of alighting therefrom the car was violently and suddenly started, whereby she was thrown, with great force and violence, to the ground, thereby sustaining the injuries for which she brought suit. At the trial the defendant company contended that the

injury sustained by the plaintiff was the result of her own negligence in attempting to alight from the car while in motion and slowing down to stop. The issue of fact, therefore, submitted to the jury was, had the car stopped, or was it still moving when the plaintiff attempted to alight? The plaintiff's evidence was that the car had stopped, while that of the defendant company was that the car was still in motion, and the jury accepted as true the evidence on behalf of the plaintiff and returned a verdict accordingly. In the opinion of this court it is said: "In such a case the preponderance of the evidence cannot influence the action of the court in considering a motion for a new trial. The jury may discard the preponderance of evidence as unworthy of credence and accept the evidence of a single witness upon which to base their verdict, and upon well settled principles the verdict cannot be disturbed if the evidence of that witness is sufficient, standing alone, to sustain it."

It is readily to be observed that the case there before the jury turned, not upon the preponderance of the evidence or the weight to be given to it, but upon the credence to be given to the statements of the witnesses who had testified before the jury.

In a case turning with the jury upon the preponderance of the evidence or the weight of the evidence, and not solely upon the credibility of the witnesses, clearly the court has the authority and must necessarily pass, to some extent at least, upon the weight of the evidence, and likewise this court, when considering the propriety of the trial court's ruling granting or refusing a new trial; but "where the case has been fairly submitted to the jury and a verdict fairly rendered, it ought not to be set aside unless manifest injustice has been done, or the verdict is plainly unwarranted by the evidence." *Jackson's Admr.* v. *Wickham & Northrop, Receivers,* 112 Va. 128, 70 S. E. 539; *Citizens' Bank* v. *Taylor,* 104 Va. 164, 51 S. E. 159.

Especially is this the rule where the case turns upon the existence or non-existence of a fact or facts or inferences to be drawn from the facts proved, and with respect to the existence or non-existence of such facts and the inferences that should be drawn therefrom, as to which reasonable men might fairly differ.

· "The general doctrine is that whether one had been guilty of negligence or not is a mixed question of law and fact, to be decided by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed or the evidence conflicting." *Winchester* v. *Carroll*, 99 Va. 744, 40 S. E. 40.

This case, it has been observed, was submitted to the jury under instructions not excepted to, and the contributory negligence of plaintiff in error sought to be proved by defendant in error as the proximate cause of his injury consisted of a lack of ordinary care for his own safety— that is to say, he failed to hold on as the other men held on to the lever, and to brace himself properly in case it should become necessary to check the speed of the car by the use of the brake. In this connection it contended that it is shown by plaintiff in error's own evidence that he was guilty of contributory negligence and that part of the evidence relied on relates to a supposed reason why plaintiff in error fell off the car and others thereon did not.

He was asked: "Isn't the reason why they didn't fall off because they had hold of the bar and you didn't? A. I suppose they were not as much unprepared, not in as much of an unprepared position, for the shock as I was."

"Q. Why were you in any more unprepared condition than any one else, if you had the lever tightly in your grasp? A. Well, in the everyday walk of life you may sometimes lose your balance and be able to regain it, and then again you may lose it and fall because not able to catch yourself."

"Q. * * * I would like to know what you meant just now when you said you were unprepared for the sudden jerk or check.  A. I mean it was altogether unlooked for by me.  I wasn't standing braced, was not bracing myself for any such shock."

"Q. Then you were not looking for it and were not prepared for it.  Is that true or not?  A. That is the inference I intended to make."

When again asked if he had been grasping the bar tightly he would have been in a position prepared to protect himself against the check, as the other men did, the witness answered:  "If I had known the check was coming I think I could have withstood it, but it was altogether unlooked for."

The sum and substance of that part of the testimony of plaintiff in error's witness, John W. Blue, also relied on as showing plaintiff in error's contributory negligence, and where the witness expresses the opinion that if plaintiff in error had had a good grasp on the lever bar he could not have fallen off—that is, as the witness expresses it, if such was his condition witness could not see how it was possible for him to fall off.  The witness was on the car at the time of this accident, but does not say that plaintiff in error was not holding on firmly to the lever bar, while plaintiff in error says emphatically that he was, and that but for the violence of the jerk, caused by the suddenness and force by which the brake of the car was applied in order to prevent a collision with the car next in front, he would not have been thrown off.  He and other witnesses testify as to the unusual force with which the brake was applied by Wimbush and as to the violence of the jerk the car gave.

Stress is laid upon the following statement also made by the witness Blue:  "I have often seen him (Cardwell) stand straight up on the car and slap the lever back down with his open hand when lever had come up the proper

33

distance to return, instead of grasping lever in hand and bending with it. I heard Assistant Foreman Jenkins tell Cardwell several times about it, and would tell him not to do it, and have seen him make Cardwell get off the front of car and get between the levers on account of his not holding on to the lever or something." The witness, however, does not say when and under what circumstances all that he relates occurred, and therefore what he stated could not and should not have had much weight, if any, with the jury when considered together with all the other evidence in the case.

Other witnesses, including Wimbush, testify for defendant in error as to plaintiff in error's habit of slapping the lever instead of holding to it, Wimbush stating that he was on the evening of this accident just slapping at the lever, but all of these statements were flatly contradicted by the plaintiff in error, and if it be true that Wimbush saw him only slapping at the lever instead of holding to it at the time that the car was checked, it was all the more culpable negligence on his part to apply the brake with such sudden force as to cause a jerk of the car sufficient to throw plaintiff in error off.

Dr. Wm. L. Ould, the physician called to attend plaintiff in error but a little while after he was injured, testifying as a witness for the defense, when asked what statement plaintiff in error made to him, answered: "Well, the first thing, of course, when I went in the car, quite naturally because of a double interest, an interest in the young man's welfare, and my duty to the company, I asked him how he got hurt. He told me he was riding backwards on the lever car, and that the brake was stepped on a little unexpected to him, and that he wasn't holding, and it pitched him off in front of the car, and that the car ran up and doubled him up under the car and ran up on him. That was his first statement to me." When asked, "Are you

certain that he made the statement that night in your presence that he fell off his hand car because he wasn't holding on to the lever?" the witness answered: "His first statement to me was when I asked him how he got hurt. He said, 'I was riding backwards, and the brake was applied to the car to check it or to stop it, and I don't know much about that, and it checked it unknown to me, and it caught me a little unawares, and I wasn't holding and it threw me off.' He says, 'I don't blame anybody but myself.' That was his statement and that was the reason why I told him he could either sign the statement then or after he came from the hospital. I didn't have any idea that there would be any trouble afterwards about it. I thought he was very glad to be taken up and be properly attended to at that time."

Other witnesses for defendant in error, as well as plaintiff in error's witness Blue, saw the plaintiff in error after he was hurt, and say that while on the way to camp or after he had arrived there, he made statements to the effect that he didn't blame anybody but himself or that "he didn't hold the company responsible, that it was his fault that he fell off." Not only did plaintiff in error testify emphatically and positively before the jury that he never made any such alleged statements at any time, whereby an issue of fact was presented wholly within the province of the jury to decide, but such statements as were attributed to plaintiff in error were not entitled to, and doubtless were not given by the jury, the probative force and effect to which they would have been entitled if they had been made under other circumstances when plaintiff in error was free from bodily and mental suffering and fully advised as to his rights.

We cannot say that contributory negligence on the part of plaintiff in error is a certain and incontrovertible inference from the evidence; nor can it be said that the verdict of the jury acquitting him of contributory negli-

gence is plainly against the evidence or plainly without sufficient evidence to sustain the finding; and therefore, upon the whole case, we are of opinion that the judgment of the circuit court should be reversed, and this court will enter judgment for plaintiff in error for the amount of the verdict in his favor found by the jury at the first trial.

BUCHANAN, HARRISON and WHITTLE, JJ., concurring:

In the view we take of this case it is unnecessary to consider the question whether or not there is any conflict, as contended by counsel, in our decision as to the manner in which the evidence on the first trial is to be considered by this court, under the provisions of section 3484 of the Code; for whether that evidence be considered as on a demurrer thereto or otherwise, we are of the opinion that it sustained the verdict of the jury, and that the court erred in setting that verdict aside. We concur in the conclusion reached by Judge Cardwell in his opinion that all proceedings in the case subsequent to the first verdict should be set aside and judgment entered thereon, but we do not concur in all that is said in his opinion as to the rule of decision in this court under section 3484 of the Code.

*Reversed.*