# Richmond.

## Kate S. Veale v. Virginia Railway and Power Company.

### January 14, 1926.

1. Street Railway—*Injury to Pedestrian—Pedestrian Attempting to Board Car at a Point which was not a Regular Stop—Negligence of Defendant not Established—Case at Bar.*—In the instant case, an action against a street railroad by pedestrian for injuries received when she was struck by a street car in attempting to board the car at a point at which she knew that the car did not regularly make a stop, plaintiff testified that when she crossed the track in front of the car, the car was stationary and she believed that it had stopped to receive her as a passenger. The conductor, the motorman and an independent witness testified that the car was not stationary but moving. The evidence failed to disclose any negligence by the conductor or the motorman at the time of the accident.

   *Held:* That the trial court did not err in setting aside a verdict of the jury in favor of the plaintiff.

2. New Trial—*Power of Trial Court—Preponderance of Evidence—Questions of Law and Fact.*—The jury may discard the preponderance of evidence as unworthy of credence, and accept the evidence of a single witness upon which to base their verdict, and upon well-settled principles the verdict cannot be disturbed if the evidence of that witness is sufficient, standing alone, to sustain it. Nor is interference with a verdict authorized where the court merely doubts its correctness, or would have found a different verdict. The admissibility of evidence is with the court, but its weight is wholly with the jury.

3. New Trial—*Power of Trial Court—When Trial Court May Set Aside Verdict.*—The trial court has the discretion and authority to set aside a verdict when it appears to be "plainly against the weight of the evidence," meaning "palpably erroneous" or "without sufficient evidence," or "against evidence," practically synonymous terms used in the decided cases; and, while the weight of the evidence is wholly with the jury, this does not mean the court cannot, as a matter of necessity, pass to some extent at least upon the weight of evidence.

4. Street Railway—*Injuries to Pedestrian—Pedestrian Attempting to Board Car at a Point which was not a Regular Stop—Duty of Motorman—Case at Bar.*—In the instant case, where plaintiff was injured while attempting to board a street car at a point which she knew

was not a regular stopping point, it was not incumbent upon the motorman to pause in the performance of the duties required of him and indicate to the plaintiff that she could not board the car, although plaintiff waved her hand towards the rear of the car indicating that she wished to board it.

5. STREET RAILWAY—*Injuries to Pedestrian—Pedestrian Attempting to Board a Car at a Point which was not a Regular Stop—Duty of Motorman—Case at Bar.*—In the instant case, when plaintiff, in attempting to board a street car at a point which she knew was not a regular stopping point, passed in front of the car, the motorman had a right to assume that she would proceed upon her way to the opposite sidewalk. The only duty he owed her was to see that she was accorded a safe passage in front of the car. It certainly was not his duty to take his gaze from the business in hand, to-wit, the operation of the car, and follow the movements of the plaintiff, unless he had reason to believe that she would place herself in a position of danger. The mere waving of the hand of plaintiff toward the rear of the car could not impute knowledge to the motorman that she expected to board the car at a place it was not scheduled to stop.

6. STREET RAILWAY—*Injuries to Pedestrian—Pedestrian Attempting to Board a Car at a Point which was not a Regular Stop—Case at Bar.*—In the instant case, an action for injuries to a pedestrian attempting to board a street car at a point which was not a regular stopping place, plaintiff testified that the conductor of the car pulled the bell cord while the car was stationary. If plaintiff's statement was correct, she must have known that the car would start. From her position and the position of the rear end of the car which she wished to enter, the car would have to move an appreciable distance before the rear part would swing over and come in contact with her body.

*Held:* That the knowledge that the car was in motion, and that she was in close proximity thereto, was sufficient notice to plaintiff of her dangerous position to cause her to seek a place of safety, which she could have done by taking a step or two away from the car.

7. STREET RAILWAY—*Injuries to Pedestrian—Pedestrian Attempting to Board a Car at a Point which was not a Regular Stop—Duty of Conductor—Case at Bar.*—In the instant case, an action for injuries to a pedestrian by a street car while attempting to board the car at a place which was not a regular stopping place, it was not contended that the conductor saw the plaintiff wave to the motorman, or that he saw her perilous situation. The only negligence imputed to him is that he didn't look out to see if any one was intending to board the car.

*Held:* That no duty was imposed upon conductor to look out for passengers at a point where the car was not scheduled to stop.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Wilcox, Cooke & Wilcox,* for the plaintiff in error.

*T. Justin Moore* and *Venable, Miller, Pilcher & Parsons,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is an action of trespass on the case by the plaintiff in error (hereinafter called plaintiff), against the defendant in error (hereinafter called defendant), to recover damages for an accident which befell her on October 1, 1925.

There was a trial by jury and a verdict was rendered in favor of the plaintiff. The trial court, upon motion, set aside the verdict of the jury, and pursuant to the provisions of section 6251, Code of·1919, entered a judgment in favor of the defendant.

[1] There is but one count in the declaration, which charges the defendant with negligence in starting its street car when it knew, or in the exercise of ordinary care should have known, that the plaintiff was about to board the same, and in striking her and knocking her down, breaking her hip, and giving her other serious injuries.

The undisputed facts are:   Defendant operates a double track street railway in Norfolk, and occupies therewith Church and Eighteenth streets.   Church street runs approximately north and south, while

Eighteenth street runs approximately east and west, and intercepts the western side of Church street, but does not cross the latter street. The double tracks turn from Church street westwardly into Eighteenth street. Just a short distance south of Eighteenth street, C avenue, which runs approximately east and west, intercepts the eastern side of Church street but does not cross Church street. The southeast corner of Church street and C avenue is a point at which the northbound cars of defendant receive and discharge passengers, but said cars are not permitted to receive and discharge passengers at the corner of Church and Eighteenth streets. Plaintiff had been in the territory east of Church street. She came back along C avenue to Church street (the place where the northbound cars receive and discharge passengers), but instead of waiting there for a car crossed from the eastern to the western side of Church street and walked northwardly towards Eighteenth street, intending, she said, to board a car at the northwest corner of Church and Eighteenth streets. While on the western sidewalk of Church street opposite the drug store at the southwest corner of Church and Eighteenth streets and looking southwardly she saw coming north the defendant's car. This was a double truck car, and its length is forty-five feet and a few inches. From the flange on the circumference of the wheel to the edge of the step is two feet and the step is fifty-four inches long, a total of six and a half feet from the flange of the wheel to the end of the step. The bumper extends beyond the step so that each end of the car extends probably in excess of seven feet beyond the wheels. Each truck of a double truck car is equipped with four wheels, and the trucks work on a swivel arrangement so that they do not change the course of the body of the car until the

front trucks have curved sufficiently to move at an approximate right angle to the body of the car and the rear of the car "don't give much swing until the rear trucks come into the curve."

The plaintiff knew that cars swing or overhang at curves, and she knew that the cars did not receive passengers at the scene of the accident; but thinking he might stop for her, upon seeing the car approaching, she states she signalled the motorman by waving her hand, and as she waved her hand she stepped out from the sidewalk. The plaintiff crossed in front of the car on the straight track just where the tracks commence to curve. At the time she crossed in front of the car it was ten to fifteen feet south of the point at which she crossed; it was at least ten feet to the south at the time she crossed the track.

As the car proceeded into the curve, the plaintiff was out of the line of vision of the motorman and behind him. As the rear trucks entered the curve the rear step of the car struck the plaintiff and caused her to fall.

The conflict in the evidence is found in the testimony of the plaintiff, who is the only witness who testified in her behalf as to the accident, and in the testimony of the motorman, the conductor and a witness named Lee.

The plaintiff states that when she crossed the track in front of the car, that the car was stationary and she believed that it had stopped to receive her as a passenger; that the car remained standing while she walked southward to the rear, or to a point within two or three steps of the rear entrance, so close thereto that she was able to see the conductor reach for the bell cord; that when she reached this point the car began to move and she turned to her right to get out of the

way and that the rear of the car swung out and struck her.

The motorman testified that he did not actually stop the car when the plaintiff was crossing in front of him, but merely slowed the car down in order to permit her to cross the track and proceed, as he thought, to the opposite sidewalk. He also testified that when the front of the car passed her she was entirely clear thereof and in a position of safety.

The witness, A. C. Lee, stated that he was following the street car in an automobile about ten or fifteen feet behind the same; that the car did not stop after it left C avenue until after the accident; that as the trucks of the car were almost in Eighteenth street he saw the feet of the plaintiff and it looked like she was walking in the same direction as the car was going; that he could not see the body of the plaintiff as the turn of the car around the curve blocked his view.

The conductor testifies that he saw the plaintiff just before she was struck by the center of the rear step and reached for the bell cord to give the emergency signal to stop the car, but did not have time to do so in time to prevent the accident; that she was struck by the rear step of the car about the time the bell rang; that the car stopped almost at once; that he immediately jumped off the back platform to assist the plaintiff and that Mr. Lee got there quickly and together they assisted her to get over to the sidewalk; that the plaintiff was mistaken in thinking he reached up to the bell cord to start the car; that the car was moving slowly around the curve into Eighteenth street; and that he rang the bell to stop the car.

The only assignment of error is the action of the trial court in setting aside the verdict of the jury and entering judgment for the defendant, on the ground that the verdict was without evidence to support it.

The legal principles applicable to the instant case are well settled.

[2] In *Forbes* v. *Southern Cotton Oil Company*, 130 Va. 245, 108 S. E. 15, Judge Burks quoted with approval the holding in *Morien* v. *Norfolk & Atlantic Terminal Company:* "In *Morien* v. *Norfolk & Atlantic. Terminal Co.*, 102 Va. 622, 40 S. E. 907 (which is strikingly similar to the case in judgment) the court said: 'In such case the preponderance of evidence cannot influence the action of the court in considering a motion for a new trial. The jury may discard the preponderance of evidence as unworthy of credence, and accept the evidence of a single witness upon which to base their verdict, and upon well-settled principles the verdict cannot be disturbed if the evidence of that witness is sufficient, standing alone, to sustain it. Nor is interference with a verdict authorized where the court merely doubts its correctness, or would have found a different verdict. The admissibility of evidence is with the court, but its weight is wholly with the jury.' "

[3] Citing the *Morien Case* in *Cardwell* v. *N. & W. Ry. Co.*, 114 Va. 500, 77 S. E. 612, Judge Cardwell says: "These cases, as well as many others which might be cited, recognize that the trial court has the discretion and authority to set aside a verdict when it appears to be 'plainly against the weight of the evidence,' meaning 'palpably erroneous' or 'without sufficient evidence,' or 'against evidence,' practically synonymous terms used in the decided cases, and while the court says, in *Morien* v. *N. & A. Terminal Co.*, *supra* (102 Va. 622, 46 S. E. 907), that the weight of the evidence is wholly with the jury, it was not meant and could not, under the facts of that case, have been

intended to mean that the cases, including those we have cited, approving the doctrine that the court must as a matter of necessity pass, to some extent at least, upon the weight of the evidence, were overruled or impaired in their authoritative force."

Great stress has been placed by the defendant upon the weight to be attached to the physical facts in the case, contending that such physical facts demonstrate that the plaintiff is in error in her statements.

[4] In view of the conclusion we have reached, it is not essential to discuss in detail the physical conditions. It is an established fact in the case that the point where plaintiff says she intended to board the car was not a regular stop to take on or let off passengers. That the plaintiff knew this to be true appears from her own testimony. Conceding that the plaintiff did as she said—"just waved my hand towards the rear end of the car, and he (the motorman) made no motion with his head or hand at all to indicate that I couldn't get on"—there was no breach of any duty which the defendant owed the plaintiff. The point at which the plaintiff desired to board the car not being a regular stopping point (a fact which, as stated, the plaintiff knew), it was not incumbent upon the motorman to pause in the performance of the duties required of him and indicate to the plaintiff that she could not board the car.

[5] When the plaintiff passed in front of the car, the motorman had a right to assume that she would proceed upon her way to the opposite sidewalk. The only duty he owed her was to see that she was accorded a safe passage in front of the car. It certainly was not his duty to take his gaze from the business in hand, to-wit, the operation of the car, and follow the movements of the plaintiff, unless he had reason to believe

that she would place herself in a position of danger. The mere waving of the hand of plaintiff toward the rear of the car could not impute knowledge to the motorman that she expected to board the car at a place it was not scheduled to stop. The statement of the motorman is that he did see plaintiff throw up her hand; that he slowed down the car for her to cross; that his last view of her showed that she was entirely clear of the car.

From a careful reading of the evidence, we do not think there was any negligence imputable to the defendant by any action or nonaction upon the part of the conductor.

[6] Conceding that the plaintiff was correct in her statement that the conductor did pull the bell cord, while the car was stationary, then she must have known that the car would start. From her position and the position of the rear end of the car, the car would have to move an appreciable distance before the rear part would swing over and come in contact with her body. The knowledge that the car was in motion and that she was in close proximity thereto was sufficient notice of her dangerous position to cause her to seek a place of safety. This she could have done by taking a step or two away from the car.

[7] It is not contended that the conductor saw the plaintiff wave to the motorman, or that he saw her perilous situation. The only negligence imputable to him is that he didn't look out to see if any one was intending to board the car. There was no duty imposed upon him to look out for passengers at a point where the car was not scheduled to stop. The age of the plaintiff, her physical condition after the accident, her expenditure of a large sum of money in seeking a cure for her injuries, appeal most strongly to one's sym-

Opinion.

pathy, but to respond to this appeal would cause the court to stultify itself by permitting a verdict to stand when the same is without evidence to support it.

The judgment of the trial court, in view of the facts and circumstances of the case, is plainly right and should be affirmed.

*Affirmed.*