Staunton.

## WADKINS V. DAMASCUS LUMBER COMPANY.

September 20, 1917.

1. APPEAL AND ERROR—*Successive Trials.*—The rule is that where there have been two trials the Supreme Court of Appeals must look first to the evidence and proceedings on the first trial, but where the evidence upon each of the last two trials was identical and the latter verdict the larger of the two, it follows that if there was no error to the prejudice of the plaintiff on the last trial, there could have been none on the former, even though there was a view of the premises by the jury on the former trial and not on the latter, where the judge of the trial court had the benefit of such light as the view might have shed upon the evidence, and it was clear that the final trial brought the case to the test under the most favorable possible circumstances for the plaintiff, since it gave him the benefit of the rules applicable to a demurrer to the evidence in the lower court as well as in the appellate court.

2. APPEAL AND ERROR—*Demurrer to the Evidence—Motion to Set Aside.*—The position of a plaintiff is more favorable upon a demurrer to the evidence by the defendant than upon a motion to set aside a verdict in his favor. Accordingly, where the plaintiff assigns as error the action of the court below, first, in setting aside a verdict in his favor, and, second, in sustaining defendant's demurrer to the evidence, the appellate court will consider only the action of the court below upon the demurrer to the evidence.

3. MASTER AND SERVANT—*Safe Place to Work.*—Plaintiff, an employee of defendant, was injured by having his hand caught and pulled into the cogs and gearing of two wheels which operated a part of the machinery of the defendant's sawmill. At the time of his injury he was attempting, with a small stick, to put some tar upon the wheels. The place where he was standing was as safe as any other place would have been with the same sort of machinery in operation around it. The construction of the defendant's plant and the installation of its machinery conformed to that of similar plants in general use in the country. As the machinery and not the place where he

worked constituted the danger and caused the injury to plaintiff, an allegation that defendant had not exercised ordinary care to furnish the plaintiff a reasonably safe place in which to work was not sustained by the evidence.

4. MASTER AND SERVANT—*Liability of Master—Safe Machinery and Appliances.*—Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business.

5. MASTER AND SERVANT—*Liability of Master—Duty to Warn Servant.*—Plaintiff was injured while attempting, with a small stick, to put tar upon the wheels operating a part of the machinery of defendant's sawmill. He was a competent and intelligent man, who had worked for the defendant about three years in and around the plant. The dangerous character of the machinery itself was perfectly open and obvious to any man of ordinary intelligence, and there was no duty upon the defendant to warn plaintiff of its dangerous character. Moreover, plaintiff had been assigned to oil the machinery for a few days and there was no evidence that he had been directed to use any tar anywhere, and there was no reason for his master to expect that he would use it. He voluntarily and gratuitously undertook something which he was not ordered or expected to do, and has no legal cause of complaint.

Error to a judgment of the Circuit Court of Washington county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*L. P. Summers,* for the plaintiff in error.

*Hutton & Hutton* and *White, Penn & Penn,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is an action for damages for personal injuries sustained by the plaintiff, John A. Wadkins, while at work for the defendant, Damascus Lumber Company. There were three trials. On the first, the jury failed to agree; on the second, there was a verdict for the plaintiff for $900, which the court set aside; and, on the third, a verdict for $1,000, subject to the opinion of the court upon the defendant's demurrer to the evidence. The court sustained the demurrer and entered up a final judgment for the defendant.

The plaintiff brings the case here, and assigns as error the action of the court, first, in setting aside the former verdict, and, second, in sustaining the demurrer to the evidence.

The rule is that where there have been two trials this court must look first to the evidence and proceedings on the first trial, but, in the present case, the evidence upon each of the last two trials was identical, the latter verdict was the larger of the two, and it necessarily follows that if there was no error to the prejudice of the plaintiff on the third, there could have been none on the second trial. It is true that there was a view of the premises by the jury on the second trial and no view by them on the third, but the judge of the trial court had the benefit of such light as the view may have shed upon the evidence, and it is clear that the final trial brought the case to the test under the most favorable possible circumstances for the plaintiff, since it gave him the benefit of the rules applicable to a demurrer to the evidence in the lower court as well as here. In other words, the position of a plaintiff is more favorable upon a demurrer to the evidence by the defendant than upon a motion to set aside a verdict in his favor (*Chapman* v. *Real Estate Co.,* 96 Va. 177, 188, 31 S. E. 74; *Cardwell* v. *N. & W. R. Co.,* 114 Va. 500, 506, 77 S. E. 612; Burks Pl. & Pr., pp. 762-4) ; and we shall, therefore consider only the action of the court upon the demurrer to the evidence.

The plaintiff was injured by having his hand caught and pulled into the cogs and gearing of two wheels which operated a part of the machinery of the defendant's sawmill plant. At the time of his injury he was attempting, with a small stick or paddle, to put some tar upon these wheels, because, as he thought, they were "cutting" and needed tar.

The case was tried upon two allegations of negligence (stated here inversely from their order in the declaration), first, that the defendant had not exercised ordinary care to furnish the plaintiff a reasonably safe place in which to work; and, second, that the defendant assigned the plaintiff to the duty of oiling and tarring the machinery in the mill without instructing him about the work and warning him against its dangers.

(1) The evidence wholly fails to make out a case for recovery upon the first charge of negligence. The place where he was standing was as safe as any other place would have been with the same sort of machinery in operation around it. It was the machinery and not the place where he worked that constituted the danger and caused his injury. Some effort was made to show that the defendant ought to have provided some sort of frame-work to protect the employees against the danger of being caught in the machinery, but, in addition to the proof that such devices would not have helped the situation for the plaintiff, the uncontradicted evidence is, further, that the construction of the defendant's plant and the installation of its machinery conformed to that of similar plants in general use in the country. "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business." *Southern Ry. Co.* v. *Lewis*, 113 Va. 117, 119, 73 S. E. 469, 470, and cases cited.

(2) Nor do we think the evidence tends to show any breach of duty to instruct and warn the plaintiff with reference to his work. He was a competent and intelligent man, about fifty-three years of age, and had been working for the defendant for about three years, during which time he had been variously employed in and around the plant, and had necessarily become entirely familiar with the premises and structures and the general character and purposes of the machinery installed there. If he had a regular and stated work, it probably was that of picking lath stock, but he was regarded by the superintendent, and evidently regarded himself, as a general laborer, being assigned from time to time to various kinds of work, some probably more dangerous and some less dangerous than oiling machinery. He had, for example, operated several machines, including the "slasher," a machine consisting of a number of saws; he had frequently put tar on cog-wheels elsewhere in the mill which operated much more rapidly than those by which he was injured; he had "fed spans" to cut laths in the lath mill; and he had been engaged at times as a sort of watchman to stay at the plant for an hour or two after the plant closed at night to look out for hot boxes about the machinery, and to report anything else that might be out of order. A few hours before he was hurt he said to another employee, "I haven't been here as long as some of the men, but I can do anything that comes up."

Having this general and special experience and acquaintance with the plant and its operation, he was asked by the superintendent, about ten o'clock in the morning of the day on which the accident occurred, to take the oiler's place for a few days, and he readily consented to do so. He was not directed to use any tar. It is true that he says in the outset of his testimony that the superintendent wanted him to "oil and tar," but he repeatedly and emphatically admits in the course of his examination that he was merely requested "to oil" for two or three days, and that tarring

was not mentioned to him at all. There is evidence to show that it was the duty of the oiler to use tar when necessary, but it also appears conclusively and without contradiction that the plaintiff had never seen anybody use tar on the wheels where he was hurt; that the oiler whose place he took temporarily had never done so; and that the superintendent did not expect and had no reason to expect that the plaintiff would do the unusual and improbable thing which he was doing when he got hurt.

When the plaintiff was assigned to this work as oiler, he was directed to call on an assistant machinist named Milhorn to "make a round with him," and he did so with the following result, as disclosed by his own statement: "Milhorn just said to me he had just oiled and it wasn't worth while for him to make a round with me then, and for me to eat my dinner just before the whistle blew at noon and be ready to oil back under the trimmer where there were several little wheels and chains, belts, one thing or another. He said for me not to go in there at the upper end while it was running—at the upper end up under the trimmer; and I eat dinner then and got ready just before the whistle blowed and after the whistle blew I oiled what Mr. Milborn told me to while it was standing still up there, and as I came back down the plankway coming down on the side of this machinery where I got caught, I noticed it was cutting right smartly, and I thought that after dinner I would put some tar on it." The plaintiff had previously thought this machinery needed tar and had called it to the attention of the regular oiler, who had disregarded the suggestion. Without asking Milhorn a word about it, the plaintiff, upon his own judgment and initiative, without any direction from any source, and without any precedent for what he was doing, procured a bucket of tar and attempted, while the machinery was in motion, to put some of it on the gearing. The machinery at that point consisted of two wheels, a small one about six inches in diameter driven by

the cogs of a larger one about thirty-two inches in. diameter. He stood on a platform immediately facing these two wheels and first tried with a very short paddle which he himself had made, to apply the tar to the large wheel. The weather was cold and the tar was stiff, and he soon found that it would not work off of the paddle on to the big wheel. He then tried to apply it to the smaller one which he knew revolved more rapidly. The tar stuck to the wheel and the plaintiff failed or was unable to let go the paddle until he had been drawn into the gearing and grievously injured.

The dangerous character of the machinery itself was perfectly open and obvious to any man of ordinary intelligence, and as to that danger there was certainly no duty upon the defendant to warn this seasoned and experienced employee. *Jacoby Co.* v. *Williams,* 110 Va. 62, 65 S. E. 491, and authorities there cited.

It is insisted that in applying tar to machinery in cold weather it should be heated; that the plaintiff did not know this; and that he should have been informed upon that point. It can hardly be said, however, that the evidence shows, or could have shown, that the plaintiff did not know about the sticky quality of tar. "Uncle Remus" very safely assumed that even the youngest and least experienced of his multitude of youthful friends would recognize this simple fact in one of his most popular nursery stories. If plaintiff's common knowledge and his acknowledged previous experience with tar (at the same time of year) had not taught him that this substance would become stickier as the weather got colder, he had certainly discovered that fact before he was injured, as appears from the following extracts from his testimony:

"Q. Tell the jury what happened? A. I was rubbing it on, up against the wheel like. Q. Which wheel, the big one or the little one? A. The little one. The big one run so slow. I tried to rub it on it and could not get it off and had to rub it on the other one with the paddle, and it

jerked my hand into the thing. * * * Q. You thought you could grease with the paddle without being jerked in? A. Yes, sir, I thought I could rub the tar off without being jerked in. * * * I didn't think I would get caught. It jerked me in there unthoughted to me. The tar was tough and hard to get out and it jerked me in there unthoughted."

Moreover, as we have seen, no order was given the plaintiff to use tar anywhere, and there was no reason for the superintendent to expect that he would use it. He voluntarily and gratuitously undertook something which he was not ordered or expected to do, and has no legal cause of complaint. *Eckles* v. *N. & W. Ry. Co.*, 96 Va. 69, 71, 25 S. E. 545; *Jacoby Co.* v. *Williams, supra.*

There is no view of the case in which a verdict for the plaintiff could be sustained.

The judgment is affirmed.

*Affirmed.*