# Wytheville

## HOWARD BAISE v. J. E. HOLLIFIELD.

June 16, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Harris, Harvey & Brown,* for the plaintiff in error.

*Hugh T. Williams* and *Ida Mandle,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

J. E. Hollifield, plaintiff in the trial court, recovered of the defendant, Howard Baise, $2,000.00 as damages for negligent injuries. This is a companion case to the case of *Howard Baise* v. *Fitzhugh Lee Warren* (this day decided) *post,* page 505, 164 S. E. 655, and the facts are identical save in this particular: Hollifield, who testified that his occupation was that of a first class carpenter, was proceeding along the highway in Harnett county, North Carolina, in the direction of Hemp, North Carolina, where he was expecting to engage in carpentry. While waiting upon the highway, at Fort Bragg, for a friend who had promised him transportation to Sanford, a town near Hemp, the defendant, accompanied by Warren, drove by in a Ford automobile which had been converted into a light truck. Plaintiff's account of what then occurred is as follows:

"Q. When Mr. Baise and Mr. Warren came along what is your recollection—how did you happen to get on the car?

"A. I just decided I would catch a way. Was not any bus line. I just decided to go and catch a way with someone to Sanford and they came driving along and I throwed up my hand and motioned to them for a ride.

"Q. What happened?

"A. They stopped.

"Q. What conversation did you have with Mr. Baise?

"A. He asked me what was the trouble. I was standing close to a big truck. I suppose he thought I had broken down. I told him not anything that I wanted to go up the road and while I was getting in he asked me where I was going and I told him Carthage and he said he was not going to Carthage he was going to Danville, Virginia, by way of Sanford and I said that was the best way to Sanford and I would ride to Sanford.

"Q. What did he say?

"A. He said all right and I got in the car.

"Q. Would you have gotten in the car if he had not said all right?

"A. No.

"Q. Did he tell you to get in?

"A. No.

"Q. Then you drove to the point of this accident?

"A. Yes.

"Q. Where were you seated in the car?

"A. It was a pick-up body and had two or three suit cases, as much as two anyway and an extra casing and I sat down on the top of the casing in the back of the car.

"Q. Unless there had been an accident there was nothing dangerous about that?

"A. I don't see anything.

"Q. What did you have to hold on?

"A. Top of the body.

"Q. If the car had gone on down the road there was nothing about the body of the truck to make it dangerous?

"A. I never saw anything.

"Q. You were seated back there comfortably and you went down to the scene of the accident? What was between you and Mr. Baise and Mr. Warren?

"A. Cab in front. Pick-up body, probably a curtain there.

"Q. When you got down and when your light went out when you had this accident, how fast was Mr. Baise going?

"A. I would say forty or forty-five miles."

Defendant's version of the matter is shown by his testimony:

"Q. Won't you please tell us, beginning at the time you first saw this man who is here suing you, just what happened about this entire incident or accident?

"A. I was on my way home to Danville (at that time I lived in Danville), from Fairmount, North Carolina, a tobacco market known as a border market, on Saturday afternoon. Mr. Warren was in the car with me. We were coming on and twelve or fifteen miles this side of Fairmount, just this side of Fort Bragg, and by the side of the road was a highway truck and standing by the side of the highway truck with one hand on it was Mr. Hollifield, the plaintiff. He held up his hand when I got the distance from here across the room.

"Q. How was he dressed?

"A. He had on a khaki shirt and I think khaki breeches. I know he had on a khaki shirt. I thought he was the driver of this truck and had had some trouble. When he throwed up his hands I applied the brakes. I was driving fast and did not want to burn the brakes and did not press down hard. I suppose I had gone fifteen or twenty feet beyond and as I passed I said: 'What is the trouble?' He answered me from in the truck body, or in this pick-up body, 'no trouble at all. I want to go to Carthage.'

"Q. Where did you say he was when he answered you?

"A. In my truck body. I did not even come to a dead stop.

"Q. Go ahead.

"A. I cannot explain how I felt—just in a flash like that. I says I am not going to Carthage, I am going to Danville, Virginia. His answer was: 'I will go to Sanford.' That is

the sum total of the words that passed between Mr. Hollifield and myself until I saw him in this court room the February term.

"Q. Did you invite him to ride?

"A. No.

"Q. Did you know he was going to get in when you stopped?

"A. No, if I had I would not have stopped. I make a rule not to pick up men on the side of the road.

"Q. Any place for him to sit?

"A. In the truck body were two suit cases and a casing.

"Q. I mean any arrangement for carrying passengers?

"A. No.

"Q. You called to him, 'what is the trouble?' and when he answered he was in the truck?

"A. Yes.

"Q. Did you know he was in at the time?

"A. No, for I had my eye on the road.

"Q. You then proceeded up the road?

"A. Yes.

"Q. You did not stop and tell him to get out?

"A. No, and I did not ever tell him he could ride because he was in there. The only thing I could have done would have been to stop and tell him to get out."

It is the contention of the defendant that under the circumstances plaintiff was a trespasser and the only duty owed by defendant was not to wantonly or wilfully injure him.

The trial court was of opinion that under the Consolidated Statutes of North Carolina and the decisions construing those statutes, the evidence was conclusive that plaintiff was not a trespasser, and gave this instruction:

"The court instructs the jury that under the evidence in this case, the plaintiff, Hollifield, was a passenger in the automobile of Baise and Baise owed Hollifield the duty to

drive and operate his car with ordinary care and in compliance with the statute of North Carolina to avoid injury to Hollifield."

In the *Baise-Warren Case*, we reached the conclusion that the law of the case was with the plaintiff. So far as the law of the present case is concerned the same doctrine applies and in our opinion the right of plaintiff to recover is dependent upon the statutes and decisions of North Carolina.

Section 2618 of the Consolidated Statutes (as amended by Pub. Laws 1925, chapter 272, section 1) prohibits the operation of a motor vehicle upon the highway in such manner "as to endanger the property or the life or limb of any person * * *."

■ Defendant admitted that at the time his automobile collided with the automobile of Mrs. Webster he was exceeding the speed limit fixed by law. The proof adduced by the plaintiff is to the effect that defendant's operation of the automobile at the moment of impact was in reckless violation of the statute, and, under the cases cited in the former opinion, the operation of the automobile by the defendant in violation of the statute constitutes negligence *per se*.

■■ The pivotal question then is, was the plaintiff a trespasser or a passenger? If a trespasser, then, under the general rule applicable in this State, the duty owed by the defendant to the plaintiff was not to wilfully injure him, or, to express it differently, the defendant must be guilty of gross negligence before the plaintiff can recover. No such rule, however, exists in North Carolina. In *Cates* v. *Hall et al.*, 171 N. C. 360, 88 S. E. 524, the court held that in that State there are no degrees of care, so far as fixing responsibility for negligence is concerned.

In this case it is unnecessary to draw the distinction between the actionable right of a trespasser and a passenger, for the reason that we concur in the conclusion of the trial

court that plaintiff was a passenger. According to the testimony of the plaintiff, he boarded the automobile with defendant's express consent. While defendant testified that he did not invite plaintiff to ride with him, there is not a scintilla of evidence that plaintiff's presence in the automobile was obnoxious to the defendant. No request was made by defendant that plaintiff vacate his seat in the automobile. By implication, at least, plaintiff was welcome to the ride. Under the circumstances, defendant owed him the duty of ordinary care. That question, together with the question of proximate cause, or the concurring negligence of the plaintiff, was properly submitted to the jury and their verdict is conclusive under the North Carolina decisions.

We are further of opinion that no error was committed by the trial court in giving and refusing instructions.

The judgment of the court will be affirmed.

*Affirmed.*