# Richmond

## C. R. CLARK v. DEMPSEY F. PARKER.

November 16, 1933.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*J. Winston Read,* for the plaintiff in error.

*Lett, Murray & Ford,* for the defendant in error.

Holt, J., delivered the opinion of the court.

We are called upon to consider a judgment in a personal injury suit. The plaintiff, C. R. Clark, lives in Oxford, North Carolina, but in July, 1931, he was in Newport News looking for work. The defendant, Dempsey F. Parker, lives in Hilton Village and is the manager of an A. & P. store in Newport News. On July 26, Clark chanced to drop in. While there Parker told him that he was going to drive down to Oxford that night and would be glad to have him go along. This invitation he accepted. They drove down in Parker's Chevrolet car, and with them went a young man, H. J. Barrett, who was also a North Carolinian and lived at Conway, in that State. Conway is something like 100 miles from Oxford. There Barrett got out and Parker and Clark went on their way. Clark says that he did not drive the car at all going down. Both Parker and Barrett say that he did drive it a part of the way. Next day Parker and Clark started back to Newport News and stopped at Conway to pick up Barrett. This they did. Parker, who was driving, said that he was sleepy, and asked Clark to take the wheel. It was then about half past eight o'clock at night. In a short time thereafter he came into collision with a Buick sedan driven by a Mr. Neville. The Chevrolet car was wrecked and Clark was badly hurt. He recovered a verdict for $3,000. That verdict was set aside by the trial court, which entered final judgment for the defendant. It is now before us on a writ of error.

Plaintiff claims that the wreck was due to a defect in the brakes of the Chevrolet car; that this defect was known to Parker but was unknown to him and was not made known when he was asked to drive. Parker contends that the brakes were not out of order and would not when applied cause the car to turn to the left.

The road itself was practically straight and was paved with cement to within a short distance of the point of collision. There it had only a dirt surface and was soft.

Formerly it was a hard-surface road, but had been plowed up and was being repacked. Clark was driving forty or forty-five miles an hour. Two cars were approaching. The first passed in safety, throwing up much dust. It was with the second, or Neville car, that the collision was had. The Buick car was struck on the left front wheel.

· On the day of the accident Parker lent his car to a friend, Mr. Shepherd, who drove down to Raleigh, about fifty miles away. On his return Shepherd told Parker that the brakes were bad and that he came near turning over. When he made this statement Parker answered: "There is not anything the matter with the brakes. You don't know how to drive it." According to Clark's claim, the brakes, when applied, for some reason would cause the car to turn sharply to the left, and that it was in this way and for this reason that the collision occurred. He further said that Parker visited him in a Suffolk hospital and there made this statement:

"He said that when he went to his home in Hilton Village and wished to turn to the left into Hopkins street he could apply his brakes—'just ordinarily, just gradually and just keep turning and just turn right around. Going down his street. He said he turned in there that way every time.'"

The road through Hilton Village runs east and west and intersecting streets cross it practically at right angles.

The Chevrolet car was a new one. Mr. Parker said that the brakes were in good condition.

H. M. Smith, a man of nineteen years' experience, is shop foreman in a garage in Newport News. Cars, when sold, are guaranteed by the factory for a certain time. This was brought to him on the 7th and 10th of July for final examination under this guaranty. He tested out the brakes and found them to be in good condition. He further said that he was an experienced driver and that "Driving a car from a hard-surface road to a mixed crushed gravel and dirt road at a speed from forty-five to fifty miles an hour, if you pull over to your right and

reach a soft surface of ground, naturally you are going to give the car a tendency to swing. And if you drive straight on a soft surface road naturally you are going to give the car a chance to rock some, or cause it to go from side to side. If the right wheel would catch in softer dirt than the left wheel the right wheel would lock and if the surface was not entirely even the traction would not be the same on both wheels and would tend to throw it one way or the other by a sudden application of the brakes. That would be true if the brakes were in good condition."

Barrett said that so far as he could tell brakes were not applied from the time the car left the concrete until the accident occurred. Neville said that the dust was so thick that he could not see where he was going and that because of it he had practically stopped when hit and that "from the way he hit me the best I could tell he was coming straight towards me. If he swerved I couldn't tell that he was." While Clark said, "The dust was so I could hardly see the lights"—the lights on Neville's car. It is not claimed that anything occurred on the trip from Newport News to Oxford or from Oxford back to indicate that the brakes were out of order.

We have seen that the Parker home was in Hilton Village. The statement that he said that he was accustomed to turn into his street from the main highway every time by using the brakes instead of the wheel is not impressive. It may possibly be true. Certainly it is highly improbable. So we come back to this: Was Parker negligent in failing to tell Clark what Shepherd had told him—that the brakes were out of order? Shepherd did tell him, but Parker, who had just driven the car on a long journey, thought that he was mistaken and that the trouble lay with Shepherd as a driver and not with the brakes, and said so. If Parker knew or ought to have known of this trouble he should have told Clark, but he was not called upon to communicate to him criticisms which he himself believed were unjustified, and which his

own experience had that day justified him in disbelieving. To which we may add the further fact that he then drove 100 miles to Conway with Clark at his side with no trouble at all. Clark himself was an experienced driver.

This case seems to have been tried upon the theory that the doctrine of *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, applies. In the reply brief for the plaintiff it is said:

"Neither party seems to have any quarrel with the *Boggs Case,* and certainly the plaintiff in error has no disposition to criticize or distinguish the same."

■ But this was a North Carolina accident, and in that State there are no degrees of negligence. *Cates* v. *Hall,* 171 N. C. 360, 88 S. E. 524; *Baise* v. *Hollifield,* 158 Va. 498, 164 S. E. 657. It follows that ordinary negligence will support a recovery. It is, however, still necessary that the owner knew or should have known that it was unsafe to drive his car.

■ Blashfield on Automobiles, vol. 1, p. 967, makes this statement of the general law: "With respect to the condition of the automobile, the rule is that one invited to ride therein by the owner or driver accepts the machine of his host as he finds it, subject only to the limitation that the driver or host must not set a trap or be guilty of active negligence, contributing to the injury of the guests. Under this rule an automobile owner is not liable to an invited guest riding therein, for injuries sustained by the latter, on the overturning of the machine, because of a defective spring, although it was a second-hand machine, and the spring was repaired with old parts; the owner believing that the car was entirely safe for the carriage of its occupants, and the accident not being caused by the giving away of the repaired part."

■ If Parker thought that his car was in good condition and had no fair reason to believe that it was not, that was enough.

Plaintiff was driving faster than he should have driven on a soft surface road, particularly when we remember

that the dust was so thick that he could scarcely see the lights on the approaching car.

This brings us again to a consideration of Code, sections 6251 and 6363.

We are not unmindful of the weight which attaches to a jury's verdict, but we should also remember that the trial judge who saw and heard the witnesses has set that verdict aside.

■ "A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him." *Maurer* v. *City of Norfolk,* 147 Va. 900, 133 S. E. 484, 487, opinion by Crump, P.

■ "The very fact that he is given the power to set aside a verdict as contrary to the evidence necessarily means that he must, to some extent at least, pass upon the weight of the evidence. 'It would, indeed, be a futile and idle thing for the law to give a court a supervisory authority over the proceedings and manner of conducting a cause before the jury, and the right to set aside the verdict of the jury therein because contrary to the evidence, unless the judge vested with such power could consider, to some extent at least, the evidence in the cause; * * *.' *Cardwell* v. *Norfolk & Western R. Co.,* 114 Va. 500, 506, 77 S. E. 612, 614;" *Kendricks* v. *City of Norfolk,* 139 Va. 702, 124 S. E. 210, 214; *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711; *Flannagan* v. *Mutual Ins. Co.,* 152 Va. 38, 146 S. E. 353; *Tabb* v. *Willis,* 155 Va. 836, 156 S. E. 556.

■ The accident was due to the plaintiff's own negligence and if we were to concede that the defendant was negligent in failing to tell him what Shepherd thought about the brakes it would be but a case of concurring negligence.

The trial court was right and its judgment must be affirmed.

*Affirmed.*

GREGORY, J., dissents.