# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NANNIE E. McQUOWN v. CHARLES H. PHAUP, JR.

April 10, 1939.

Record No. 2055.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Browning and Spratley, JJ.

The opinion states the case.

*John W. Fussell,* for the plaintiff in error.

*Ralph C. Bethel,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In this case, plaintiff obtained a verdict for $1,250, compensation for injuries suffered in an automobile accident. That verdict the trial court set aside. She has appealed.

The plaintiff, Nannie E. McQuown, testifying in her own behalf, gives this account of the accident:

At about 7:30 P. M. on January 20, 1937, she parked her automobile along the northern curb of Broad street in the city of Richmond, immediately east of the east entrance of the railway passenger station. This entrance is a continuation in a northerly direction of Davis avenue, which reaches Broad street at that point from the south. Broad street is a broad arterial highway running east and west with lights in its center and two sets of car tracks for east and west bound traffic. Between them and this street's curbs

vehicular traffic moves. After parking her automobile, she proceeded southwardly across Broad street in the crosswalk marked for pedestrians, which runs from the northeast corner of the intersection of the entrance to the Broad street station to the southeast corner of Broad street and Davis avenue. From that point she left the sidewalk and walked due west, across Davis avenue, within the lane indicating the prolongation of the southern sidewalk line of Broad street. She was going to the Capitol Theatre, located on the south side of Broad street between Davis avenue and Robinson street, the latter being the next street opening into Broad street from the south. As she left the southeast corner of Broad street and Davis avenue, she looked to see if there was any motor traffic in the immediate vicinity of that intersection and saw none. She then walked westwardly, across Davis avenue, to a point near its center, when she noticed two automobiles approaching on Broad street from the west. They were then near the entrance to Davis avenue, and wishing to ascertain whether or not they, or one of them, should turn into that avenue, momentarily paused. When it became apparent that they would not, she started forward towards the southwest corner of Broad street and Davis avenue, and when about three-fourths of the way across and as the last of these two cars passed, the light from the defendant's car flashed upon her. She quickened her pace in order to escape collision, but without avail. That car, when its lights first flashed, appeared to be about fifteen feet away. The night was dark and there was a light rain. She was carrying an umbrella but it did not obscure her vision.

Upon cross-examination, she again said that she was within the lane marked for pedestrians when struck and at least three-fourths of the way across Davis avenue, also a wide thoroughfare. Her leg was fractured, and she was badly bruised. Doctors' bills, etc., amounted to about $400.

The defendant, Charles H. Phaup, Jr., testifying on his own behalf, said that he was driving his automobile out of the passenger station entrance and across Broad street into

Davis avenue immediately before the accident at the rate of about five miles an hour. He did not see the plaintiff, and his first knowledge of the accident came when he "felt a jolt." He then applied his brakes and came to a full stop. "As he was opening the door of his car and was alighting therefrom, he saw the plaintiff falling to the street." She fell at a point exactly nine feet from the southernmost white line marked for pedestrians across Davis avenue.

Linwood Morris, colored, worked for the William Byrd Hotel and was standing in one of its doorways one-fourth of a block from the intersection and south on Davis avenue. He saw the plaintiff proceeding westwardly towards the southwest corner, but his view was broken by parked automobiles after she had reached the center of that avenue. In a few seconds he heard a woman scream, and then found her immediately in front of the defendant's automobile. She had been "holding an umbrella over her head."

John Carlton, colored, another witness for the defendant, was standing between two driveways which lead into an automobile service station on the southeast corner of Broad street and Davis avenue. He testified that he saw the plaintiff coming northwardly on Davis avenue from the direction of Grace street, and along its eastern sidewalk. She passed where he was standing and did not walk to the corner but cut diagonally across the avenue to this southwest corner and was struck when she had gotten into the usual lane of southbound traffic. He further said that she was walking with an umbrella over her head in such manner that she could not see the defendant's car.

If Phaup, with his lights burning, traveling at the rate of five miles an hour, did not see the plaintiff until after he struck her, he certainly was not looking; and if he was not looking, he was negligent. For this negligence, he has given no excuse.

Was the plaintiff guilty of contributory negligence? If so, the burden of proving that is upon him.

She said that she was crossing in the lane marked out for pedestrians; that she paused when halfway across to see

whether or not two cars, moving east, would cut into the avenue and moved forward when it seemed that they would not; and that it was when the last of these cars had passed that the light of the defendant's car, fifteen feet away, flashed upon her. She quickened her pace to escape but could not.

To establish negligence, it is said that the fact that she fell nine feet from the south line of the pedestrians' walkway demonstrates that she was not where she should have been, but she may easily have been carried that distance by the car which struck her. The defendant's statement that he felt a jolt, put on his brakes, was opening the car door and alighting from it when he saw her falling, is not impressive. We would expect one hurt as she was to have been thrown by the impact or carried forward as she fell.

Morris said that she had an umbrella but does not state if it obscured her vision; Carlton said that she was carrying it in a way which did. This she denied. Morris said that when he first saw her, she was moving northwardly on the avenue. She said that she was never on it except to cross it at the proper place. If she parked her car on the north side of Broad street, a fact which is not denied, there was no occasion for her to go upon the avenue at all except to cross it. In the light of this testimony, her position when struck and conditions which immediately preceded it were preeminently matters for the jury.

Code, section 6363, provides that "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."

It must be read in connection with Code, section 6251, and applies to proceedings in this court where the verdict below was confirmed by the trial court. *Davis* v. *McCall*, 133 Va. 487, 113 S. E. 835; *Flannagan* v. *Northwestern Mutual Life Ins. Co.*, 152 Va. 38, 146 S. E. 353.

A verdict which had been disapproved "by the trial judge is not entitled to the same weight on appeal as one

that has been approved by him." *Maurer* v. *City of Nor-folk*, 147 Va. 900, 133 S. E. 484, 487, opinion by Crump, P. See also, *Burch* v. *Grace Street Building Corp.*, 168 Va. 329, 191 S. E. 672.

The trial judge may and should set aside a verdict which is contrary to the evidence or without evidence to support it. Code, section 6251. In so doing he must, to some extent at least, pass upon the weight of the evidence. *Card-well* v. *Norfolk & W. Ry. Co.*, 114 Va. 500, 77 S. E. 612, 614. But he does not sit as a jury. It is not his duty to pass upon the preponderance of evidence, and he should not set aside a verdict supported by testimony which there is no reason to discredit.

In *Braswell* v. *Virginia Electric & Power Co.*, 162 Va. 27, 173 S. E. 365, 369, we said:

"In *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711, 712, Judge McLemore said: 'Where it can be seen from the evidence as a whole that the verdict has recorded a finding in plain deviation from right and justice, the court may, indeed should, set it aside.'

"To the same effect, see also, *Kendricks* v. *Norfolk*, 139 Va. 702, 124 S. E. 210; *Flannagan* v. *Northwestern Mutual Life Ins. Co.*, 152 Va. 38, 146 S. E. 353; *Tabb* v. *Willis*, 155 Va. 836, 156 S. E. 556; and the late case of *Clark* v. *Parker*, 161 Va. 480, 171 S. E. 600, decided by this court in November, 1933.

"Of course we do not mean to say that this or the trial court sits with the jury to pass upon the preponderance of evidence. *Ellison* v. *Hampton, etc., Railway Co.*, 154 Va. 39, 152 S. E. 373; *Wilkins* v. *Davis*, 158 Va. 763, 164 S. E. 649. It is only when the verdict is plainly wrong that it should be set aside."

We have no rule to tell us when there has been a plain deviation from right and justice. That, within fair limits, must be measured by the conscience of the court.

Our statute deals with the rights of pedestrians. In Code, section 2154, subsection 123, it is said:

"The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices."

In subsection 126 of said section, it is said:

"This shall not entitle the pedestrian to enter or cross the intersection, regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing."

From this it will be seen that while a pedestrian can neither enter nor cross intersections regardless of approaching traffic, she has under the statute the right of way. This right, when not abused, must be upheld.

Plaintiff was not negligent in entering the intersection; she was not negligent in hesitating in the center of the avenue to watch the course of eastbound traffic on Broad street. To ask that a pedestrian at a crossing in which she had the right of way look in every direction at once is to ask too much. *Lucas* v. *Craft,* 161 Va. 228, 170 S. E. 836. When these eastbound cars had passed, she started forward, and it was then that the lights of the plaintiff's car flashed upon her. She quickened her pace to escape collision but could not. All of this the jury might have believed. It is not incredible. With these facts taken as established, it appears that she did what most prudent people would have done. There is in the verdict no plain deviation from right and justice.

The judgment of the trial court should be reversed and judgment entered here confirming the jury's verdict. It is so ordered.

*Reversed.*

CAMPBELL, C. J., concurs in result.