# Wytheville

STATE OF MARYLAND, FOR THE USE OF IDA MAY JOYNES, ET AL. V. HARVEY T. COARD.

June 10, 1940.

Record No. 2245.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

574

The opinion states the case.

*Jeff F. Walter, J. Brooks Mapp* and *William King Mapp,* for the plaintiff in error.

*H. Ames Drummond, Ernest Ruediger* and *Godfrey Child,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The State of Maryland, suing for the use of Ida May Joynes, widow of Henry T. Joynes, deceased, and for the use of his five children, all residents of Virginia, brought this action in the Accomack Circuit Court against Harvey T. Coard, also a resident of Virginia, seeking the recovery of damages in the sum of $10,000 for the death of Henry T. Joynes. The latter was killed instantly on the night of November 24, 1938, when an automobile owned by Coard and in which he, Coard, was riding but which at the time was being driven by Miss Margaret E. Hickman, collided with the rear end of the deceased's car, parked on a street in Pocomoke City, Maryland, and also struck the deceased who was standing either on the running board or on the street beside his car.

■ While both the deceased and his widow and children, on the one hand, and the defendant, Coard, on the other, were, and the widow and children still are, residents of Virginia, and while this proceeding was instituted in a Virginia court, yet as the accident occurred in Maryland any right of action for the resulting death arises out of the law of Maryland and not out of that of Virginia. This, of course, was recognized by counsel for the plaintiff, and in preparing the notice of motion for judgment various provisions of the Maryland statutes relating to the subject matter were alleged as legal basis of the action.

The defendant filed a demurrer to the notice of motion for judgment on the following grounds:

"1. That the case is not within the jurisdiction of the courts of this State; and

"2. Because the motion for judgment shows on its face such contributory negligence on the part of the deceased as to bar a recovery."

The demurrer was overruled. However, at the conclusion of the plaintiff's evidence the trial court sustained the defendant's motion to strike it, which ruling of course resulted in a verdict and judgment for the defendant. The case comes here on a writ of error granted the plaintiff. The defendant assigns cross-error, based upon the action of the trial court in overruling the demurrer to the notice of motion for judgment in so far as the demurrer called in question the jurisdiction of the courts of this State.

First, then, as to the question of jurisdiction. The challenge was and is predicated upon the contention that the Maryland statute relating to actions for damages for death by wrongful act differs from the Virginia statute on that subject to such an extent that the principle of comity does not apply, and hence that the courts of Virginia are not warranted in entertaining an action founded on the Maryland statute. Code Pub. Gen. Laws Md. 1924, art. 67, section 1 et seq.; Code Va. 1936, section 5786 et seq.

The differences in the two statutes are stated in the brief of the defendant's counsel to be:

1. That by the Maryland statute the action must be in the name of that State for the use of the prescribed beneficiaries, whereas by the Virginia statute it must be in the name of the decedent's personal representative.

2. That the Maryland statute does not limit the amount of the recovery, whereas the Virginia statute fixes $10,000 as the limit.

3. That the Maryland statute authorizes a recovery on behalf of the surviving wife, husband, parent, or child and on their behalf only, whereas the Virginia statute "places no limitation whatever on the class of persons that may recover."

Incidentally, the quoted words are too sweeping as a characterization of the Virginia statute.

As regards the case at bar, it is obvious that none of the foregoing differences is of a substantial nature. Indeed, they are little, if any, more than academic, since (a) whether the action be in the name of the State or in the name of the executor or administrator is a matter purely of form, inasmuch as, in either instance, the nominal plaintiff sues in a representative capacity, (b) the sum prayed for is $10,000, which is the limit of recovery under the Virginia statute, and (c) the beneficiaries in whose behalf the action is brought are the widow and children of the deceased, and these are included in both statutes. So that, as a practical matter and as concerns the present case, it seems to us that there are no points of material difference in the two statutes.

However, as counsel for the defendant have raised the question of jurisdiction and have argued it with considerable earnestness, we shall pursue it somewhat further, although the general rule and the reasons underlying it have been so long recognized by most courts that any extended discussion is quite unnecessary.

In *Nelson* v. *Chesapeake & Ohio Railroad Co.*, 88 Va. 971, 14 S. E. 838, 15 L. R. A. 583, an action was brought in a Virginia court by the administrator of the estate of a decedent against the railroad company for damages for the death of his intestate. The accident having occurred in

West Virginia, the action was based upon the statute of that State. The railroad company demurred to the declaration, partly on the ground that the Virginia court had no jurisdiction of the subject matter. In an opinion by Lewis, P., the question of jurisdiction, in both its fundamental and more or less incidental aspects, was dealt with in a clear and concise way. We quote from it as follows:

"It is contended, however, that the statute, whatever may be its nature, can have no extra-territorial operation, and, therefore, that an action dependent upon it can be maintained only in the State of West Virginia.

"At common law all personal actions, whether *ex delicto* or *ex contractu* are transitory, and may be brought anywhere the defendant can be found. * * *

"Independently of statute, however, the general rule is that all *torts* die with the person. Consequently the right to sue for personal injuries causing death is purely statutory. The question, therefore, arises whether such a cause of action arising in one state may be asserted in another. There is no doubt that, in a general sense, a statute can have no operation beyond the state in which it is enacted. But where a right to sue is given by statute in one state, we can see no good reason why an action to enforce that right should not be entertained in the courts of another state, on the ground of comity, just as if it were a common-law right, provided, of course, it be not inconsistent with the laws or policy of the latter state. If this were not so, a cause of action of any sort arising in a state whose laws are codified could not be asserted in another state because the right to sue is statutory.

"The true test, therefore, in all such cases would seem to be this: Is the foreign statute contrary to the known policy, or prejudicial to the interests, of the state in which the suit is brought? And if it is not, then it makes no difference whether the right asserted be given by the common law or by statute."

In that case the test question posed by the court was answered in the negative, the court holding that the statute

of West Virginia contained nothing that was in conflict with the policy of Virginia as expressed in her own statute, nor anything prejudicial to the latter State's interests.

But counsel cite certain Maryland cases wherein the court of that State declined to enforce rights of action based upon the death-by-negligence statutes of other States, among them West Virginia, and reason thus:

"The Supreme Court of the State of Virginia having decided that the West Virginia and Virginia statutes are similar, and the Supreme Court of the State of Maryland having decided that the statute of the State of Maryland and the statute of the State of West Virginia are dissimilar, it follows that the statutes of the State of Maryland and the statute of the State of Virginia are dissimilar, and the court should have sustained the demurrer filed by the defendant on the ground that the State of Virginia had no jurisdiction in this case."

Regarding the above, we deem it sufficient to say that the terms "similar" and "dissimilar" obviously are much too indefinite to serve as premises. Besides, we do not think the matter is quite so simple as counsel's reasoning would imply.

We have examined the Maryland cases cited by counsel, namely, *Ash* v. *Baltimore & O. Railroad Co.*, 72 Md. 144, 19 A. 643, 20 Am. St. Rep. 461; *Dronenburg* v. *Harris*, 108 Md. 597, 71 A. 81; and *Davis* v. *Ruzicka*, 170 Md. 112, 183 A. 569. It does appear from those decisions that the disposition of the Maryland court is to decline jurisdiction in death-by-negligence cases where the right to sue is given by the statute of another State. We think, though, that that general attitude is contrary both to the weight and to the trend of authority. And while the rule of comity rests in a measure upon the custom of reciprocity, we do not understand that it by any means is founded solely, or even chiefly, upon such custom, but rather upon what appear to be the just rights of the parties litigant. As observed by the Missouri court in *Hughes* v. *Winkleman*, 243 Mo. 81, 147 S. W. 994, 997, L. R. A. 1916A, 1007:

"At very root, comity is courtesy. In jurisprudence, however, comity is a kind of courtesy which, subject to exceptions, is administered by fixed rules of law and rises to the dignity of a legal right, as over against mere politeness in social intercourse."

After giving quite an extended review of the cases, Mr. Justice Hudspeth, in a well-considered opinion in *Hart* v. *Oliver F. E. S. Co.*, 37 N. M. 267, 21 P. (2d) 96, 101, reached this conclusion:

"We believe that the most that can be deduced from the cases is that courts, in refusing to accord recognition to rights based upon the law of, or transactions occurring in, another state or country, have sometimes, and in a few situations, been influenced by the fact that the courts of that state or country would not recognize similar rights arising at the forum. On the other hand, there are several cases in which courts have expressly refused to make reciprocity a test for the enforcement of rights acquired outside of the jurisdiction of the forum, and have enforced them in spite of a lack of reciprocity. (Citing cases.) These, the more recent cases on the question, would seem to indicate a modern tendency to restrict the doctrine."

Furthermore, in the case at bar the beneficiary plaintiffs are not legal residents of Maryland seeking relief at the hands of the courts of Virginia, but those plaintiffs, as also the defendant, happen to be domiciled in Virginia. Allusion is made to this fact merely because it renders the present case one of qualified comity only.

Without prolonging the discussion, it is our opinion that the trial court did not err when it overruled the demurrer, insofar as the latter was grounded on the contention that the Virginia courts are without jurisdiction of the case.

With the question of jurisdiction settled, the case came on to be heard upon its merits, and of course it was necessary at that hearing that the court have in mind the rules applicable to a Virginia trial of a Maryland accident.

"The broad, uncontroverted rule is that the *lex loci* will govern as to all matters going to the basis of the right

of action itself, while the *lex fori* controls all that is connected merely with the remedy." 5 R. C. L. 917. *Flowers* v. *Virginian Ry. Co.,* 135 Va. 367, 116 S. E. 672; *Baise* v. *Warren,* 158 Va. 505, 164 S. E. 655; *Clark* v. *Parker,* 161 Va. 480, 171 S. E. 600; and *Sutton* v. *Bland,* 166 Va. 132, 184 S. E. 231.

The accident happened on an arterial street in Pocomoke City, a town of about 3,000 people, and in its built-up section. It happened at night. The street was covered with ice; it was snowing, and snow and sleet froze upon windshields. Probably because of this, Joynes stopped his car, which was headed south, got out on the left-hand side and was wiping off his windshield when struck.

The street itself is paved and 30 feet wide. His car stood 5 or 6 feet from the right-hand curb, and Joynes, who was on its left, must have been near the center.

By statute in Maryland, cars not in motion on two-way streets shall stand with their right side as near the right-hand side of the street as practicable. Article 56, sections 209 and 193. This statute was violated, and Joynes' failure to observe it proximately contributed to the accident. Had there been no statute it would plainly have been negligence for him to stop where he did stop, on a night like this.

Whenever one sees another in a place of peril from which it appears that he can not extricate himself or where it appears that he is unconscious of his danger, or whenever by the exercise of ordinary care the defendant should have been cognizant of the situation and has a clear chance to avoid an accident with safety to himself, he must take that chance. In short, he is charged with what he saw and with what he should have seen. The antecedent negligence of a plaintiff does not of itself preclude his recovery. Starkly stated, the reason for the rule is this: One can not kill another merely because he is negligent.

This is the common law rule as it has developed, and in the course of its development it has been made plain that one might be liable because of what he should have seen as well as for that which he actually saw. Shearman &

Redfield on Negligence, 6th Ed., vol. 1, sec. 99. It is a universal rule and obtains in Maryland as it does elsewhere. *Northern Central Railway Co.* v. *State*, 31 Md. 357, 100 Am. Dec. 69; *Baltimore Consol. Rys. Co.* v. *Armstrong*, 92 Md. 554, 48 A. 1047, 54 L. R. A. 424. Probably the leading case on this subject is that of *Davis* v. *Mann*, 10 Mees. & W. 546.

 Applying this rule to the facts under review, it follows that if Coard or his driver saw, or in the exercise of reasonable care should have seen, the Joynes car, standing, as it was, far out into the street, and had a clear chance to avoid a collision, he is liable. Joynes' car was followed by two other automobiles, the drivers of which did see it, turned to the left and passed in safety. William E. Myers, an eyewitness, saw the reflection of Coard's lights on the back of Joynes' car when they were 60 feet apart, and it was not until the Coard car was within 3 or 4 feet of the Joynes car that the driver screamed or made any attempt to avoid a collision. Myers estimates that the Coard car was traveling about 25 miles an hour. Whatever may have been its speed, the Joynes' car, presumably with brakes on, was knocked 10 or 15 feet.

By stipulation a Maryland statute provides that a car shall not be operated at a greater rate of speed than is reasonable and proper and not to exceed 20 miles an hour in a thickly settled part of any city, town or village. The statute further provides that

"Every vehicle, including motor vehicles and horse-drawn vehicles, operated or driven on the public highways of the State, at any time when there is not sufficient daylight to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of two hundred (200) feet ahead, shall be provided with lights, as hereinafter provided of sufficient power and so adjusted and operated as to enable the operator or driver to proceed with safety to himself and the other users of the highways under all conditions of light, road and weather." Code Pub. Gen. Laws, Supp. Md. 1935, art. 56, section 193.

A failure to follow the statute contributed to the accident. Moreover, the situation was this: Either Miss Hickman saw or should have seen the Joynes car, unless her windshield was so encrusted with snow and ice as to make that impossible; and if such a condition did obtain, then it was her duty to stop her car and to clear the windshield, just as Joynes was doing. Had this been done, she could have seen the Joynes car. Plainly if she saw or should have seen the Joynes car in time to have avoided the accident, then liability attaches. The drivers of two other cars did see it and did turn to the left, as they should have turned. There was at least 15 feet of fairway.

If the driver was not looking, the defendant is liable, for she could have avoided the accident as did the two cars ahead, and a jury has the right to assume that she was not looking, for she gave no evidence that she saw the Joynes car until immediately upon it. If her windshield was so encrusted with snow and ice that she could not see, then her failure to clear away that obstruction makes the defendant also liable, for one can no more drive with impunity where sight is obscured than she can without attention as to where she is going.

In *Clark* v. *Parker, supra,* we held that one driving faster than he should have driven into a cloud of dust, which obscured his vision, was negligent. Here, on this ice-covered street, in a snowstorm, utmost care was but ordinary care.

For reasons stated, this case is reversed and remanded, to be tried in accordance with the rules here stated.

*Reversed and remanded.*