# Richmond

### Salvatore Fedele v. National Liberty Insurance Company of America.

November 19, 1945.

Record No. 2951.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine*, for the plaintiff in error.

*Henry J. Lankford*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

On November 1, 1943, the National Liberty Insurance Company of America issued to Salvatore Fedele a fire and theft insurance policy covering his 1942 Mercury sedan, for the period of one year, in the sum of $920. On January 5, 1944, the automobile was taken from the place where it had been parked and was destroyed by fire. After due proof of loss had been filed with the Insurance Company, it declined to pay the loss and Fedele brought suit to recover the amount of the policy. The Insurance Company defended on the ground that Fedele, the insured, had unlawfully and fraudulently procured and instigated the taking and burning of the automobile. There was a trial before a jury which resulted in a verdict for the plaintiff for the full amount sued for. The trial court, being satisfied that the verdict was contrary to the law and the evidence, set it aside and entered a final judgment for the defendant Insurance Company. To review that judgment the present writ of error has been allowed.

It is elementary that principles of public policy deny the right of recovery to an insured who fraudulently sets on

fire the property covered by the contract of insurance. 29 Am. Jur., Insurance, sec. 1028, p. 777.

Here it is conceded that the trial court set aside the verdict because it was convinced from the evidence that the plaintiff (Fedele) had fraudulently procured and instigated the taking and burning of the car. The sole question presented to us is whether the jury's verdict in favor of the plaintiff on this issue was binding on the court below, or whether the court was right in setting aside such verdict and entering a final judgment for the defendant Insurance Company.

Fedele came to Norfolk in 1940 and was first employed as a machinist at the Navy Yard for a period of about a year and a half. Next he worked as a taxicab driver. In 1943 he acquired two or three second-hand automobiles and went into the taxicab business for himself.

In August, 1943, he purchased the 1942 Mercury sedan, the subject of this suit, from John Bonniville, a taxicab operator, for $950. The car had then been driven from 50,000 to 60,000 miles, but the motor was in good condition.

Between 7:30 and 8:00 o'clock P. M., on the night of January 5, 1944, Fedele and his wife parked the car in front of the post office on Granby street, in the city of Norfolk. They attended a moving picture show and when they returned to the place where the car had been parked it was gone. Fedele immediately reported the loss of the car to the police. At about 11:30 that night he was notified by the police, by telephone at his home, that the car had been found badly damaged by fire on Sewalls Point road, about five miles from the place where it had been parked. The fire department had responded to the alarm caused by the burning car at 9:20 P. M.

Investigation by the police disclosed that the car had been stolen and burned by William A. Mickey, a former employee of Fedele, and, at the suggestion of the police, Fedele, on January 31, swore out a warrant for Mickey's arrest. After a preliminary hearing in the police court, Mickey was held for the grand jury. Later, and before the civil suit on the

insurance policy came on to be heard, Mickey was sentenced to the penitentiary, but whether on the charge of stealing and burning the car, or on another charge, the record is not clear. At any rate, he was not available as a witness at the trial of the present case.

It developed that on the night of January 5, Mickey, accompanied by Ethel Cooper, picked up Ralph Geiger at the latter's home. They drove in Mickey's car to the post office where the Fedele car was parked. Mickey got out of his own car, opened the unlocked door of the Fedele car, took the key from over the sun visor, and drove the latter car around the corner. In the meantime he had instructed Geiger and the girl to follow. Mickey then drove the Fedele car out to a remote place on Sewalls Point road, and Geiger and the girl followed in Mickey's car. Mickey opened the trunk of the Fedele car and there found a jug of gasoline which he poured over the upholstering and interior of the car. He undertook to break the steering lock of the car, but being unsuccessful in this he threw the keys away. After he had struck a match and set afire the interior of the car, the trio left the scene.

Shortly thereafter Geiger came before the Juvenile and Domestic Relations Court on another charge, and it was through his disclosure that Mickey was arrested. In the meantime the girl, Ethel Cooper, had returned to her home in North Carolina, and was not available as a witness when the present suit was tried.

On cross-examination, Fedele was asked whether he had had any business transactions with Mickey shortly before or after the theft and destruction of the car. He was positive in his testimony, and repeatedly stated, that he had had "no business dealings whatsoever" with Mickey and had paid him no money at or about that time. In fact, he said, he had not even spoken to Mickey between December 20, when Mickey applied to him for a job and was turned down, and the day, shortly after January 31, when Mickey was tried in police court on the charge of having stolen and burned the car.

He was then asked whether he had not paid Mickey the sum of $50 shortly after the car was destroyed. He emphatically replied that he had not. When pressed further he finally stated that he had loaned Mickey the sum of $50 "around the middle of the month," and that the money was paid by a check which he (Fedele) had drawn on the Southern Bank of Norfolk. This check, he said, was dated on or about December 15, 1943. Fedele testified that this loan had no connection with the burning of the car, but was for the purpose of defraying certain expenses which Mickey said he had incurred by reason of his involvement with a woman.

When the trial court called for the cancelled check evidencing this "loan," Fedele's counsel replied that his client had "misplaced" it. Just when and how this occurred, no one explained.

The records of the Southern Bank showed that Fedele's account with it had been closed on July 6, 1944, just three weeks prior to the trial. An officer of the bank testified that by means of a "Recordak system" it photographed and preserved copies of every check which passed through the bank; that these photographs showed that in the month of December a single check for $1.00 had been drawn on this account, and that on January 10, 1944, the bank had paid a check for $50, dated January 8, 1944, and payable to William A. Mickey.

Fedele was then recalled to the stand by his counsel and asked whether the check which he gave Mickey and which he had stated was dated on or about December 15, could not in fact have been dated January 8, 1944, as shown by the bank's record. His only reply was: "It could be."

In the meantime Geiger had testified that "two or three days" after the car had been burned, he and Mickey called at Fedele's home, at which time Fedele gave Mickey a check for $50 for having burned the car, but not until after they had discussed whether it would be safe to make such payment by check. Mickey insisted that the money be paid

by check, saying that, "If anything is said about it I can say I worked for you and you owed me some money."

It is argued that Geiger's record as a juvenile delinquent justified the jury in rejecting his testimony. But the main facts testified to by him either are uncontradicted or are corroborated by indisputable documentary evidence. It is uncontradicted that the Fedele car was parked on the street with the doors unlocked, that Mickey found the key above the visor and was thus able to drive it away at his pleasure. It is undisputed that the gasoline was found in the trunk of the car. Fedele gave no explanation whatsoever of this, nor did he deny that he had put it there.

The photostatic records of the bank corroborate Geiger's statement that the $50 check which Fedele gave Mickey was given "two or three days after the fire," and show that Fedele's positive and repeated statement that it was three weeks earlier was false.

Fedele, although recalled to testify in rebuttal on other matters, never denied that Geiger was present when the check was passed, or that he (Geiger) had correctly related what had then and there occurred.

The plaintiff concedes that Mickey removed the car from the place where it was parked and burned it. Indeed, as has been said, he swore out a warrant against Mickey charging him with the offense. No motive is assigned by the plaintiff for Mickey's act. If Fedele's story be true, why should Mickey thus have destroyed the property of a man who had just befriended him and loaned him $50? If, on the other hand, the payment was in fact made after the fire, it is inconceivable that Mickey would have sought aid of one whom he had thus wronged only two or three days previous. We know from human experience that things do not happen in that manner.

It is suggested that had the payment been made pursuant to the unlawful conspiracy which the Insurance Company charges, surely Fedele would not have been so stupid as to have used a check for the purpose. Possibly, as Geiger testified, this was at Mickey's insistence. Even so, the books

are full of cases where so-called "perfect crimes" have been solved because of some stupid or careless slip of one of the actors. Of course, paying Mickey by a check was stupid, and so was the whole conspiracy which so plainly appears from this record.

We have so frequently laid down the rule for determining when and under what circumstances the trial court may or should set aside a jury's verdict that a restatement of it is hardly necessary.

In *McQuown* v. *Phaup*, 172 Va. 419, 426, 2 S. E. (2d) 330, 332, this is said: "The trial judge may and should set aside a verdict which is contrary to the evidence or without evidence to support it. Code, section 6251. In so doing he must, to some extent at least, pass upon the weight of the evidence. *Cardwell* v. *Norfolk, etc., Ry. Co.*, 114 Va. 500, 77 S. E. 612, 614. But he does not sit as a jury. It is not his duty to pass upon the preponderance of evidence, and he should not set aside a verdict supported by testimony which there is no reason to discredit."

"* * * Where it can be seen from the evidence as a whole that the verdict has recorded a finding in plain deviation from right and justice, the court may, indeed should, set it aside." *Meade* v. *Saunders*, 151 Va. 636, 640, 144 S. E. 711, 712. See also, *McQuown* v. *Phaup, supra* (172 Va., at page 426, 2 S. E. (2d), at page 332), and cases there cited.

"We have no rule to tell us when there has been a plain deviation from right and justice. That, within fair limits, must be measured by the conscience of the court." *McQuown* v. *Phaup, supra* (172 Va., at page 426, 2 S. E. (2d), at page 333).

When this court reviews the action of a trial court in setting aside a verdict, we bear in mind, as Mr. Justice Spratley said in *Burch* v. *Grace St. Bldg. Corp.*, 168 Va. 329, 343, 191 S. E. 672, 678, that a "verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him, and it is incumbent upon the plaintiff in error to show error

when the verdict has been set aside." A number of cited cases support the quotation. See also, Code, sec. 6363.

The case at bar was tried by a learned and experienced trial judge who heard the witnesses and saw their demeanor on the stand. He was of opinion that the verdict "recorded a finding in plain deviation from right and justice," and set it aside. We can not say that such action was erroneous. On the contrary, a careful consideration of the record convinces us that it was plainly right. Accordingly, the judgment is

*Affirmed.*