## CIRCUIT COURT OF THE CITY OF NORFOLK

Marybelle M. Auer,
administratrix
of the estate of
Nicholas Auer,
deceased

  v.

Lenox Baker et al.

June 24, 2004

Case No. (Law) CL03-1037

BY JUDGE JOHN C. MORRISON, JR.

This matter was tried before a jury and is currently before the Court on Defendant Cardiovascular Associates, Ltd.'s (Cardiovascular Associates) motion to set aside the jury's verdict. For the reasons set forth below, the Court grants Cardiovascular Associates' motion, setting aside the jury's verdict as there is insufficient evidence to support it.

Marybelle M. Auer (Auer), as the administratrix of the estate of Nicholas Auer (the Decedent), brought this medical malpractice action against Dr. Lenox Baker, Mid-Atlantic Cardiothoracic Surgeons, Ltd., Dr. Edward Miller, and Cardiovascular Associates, Ltd. (collectively, the Defendants), whose negligence Auer alleged caused Nicholas Auer's death. Dr. Baker performed an aortic valve replacement on the Decedent. Dr. Miller was the Decedent's cardiologist, and Auer's claims against Dr. Miller and Cardiovascular Associates arose from actions or omissions allegedly committed by them following the valve replacement surgery done by Dr. Baker. Dr. Miller was found not negligent, individually, by the jury, and Dr. Baker and Mid-Atlantic Cardiothoracic Surgeons, Ltd., settled with the plaintiff. Therefore, the only remaining issue is whether the verdict against Cardiovascular Associates should be set aside because Auer did not present

sufficient evidence from which the jury could infer that Cardiovascular Associates' breach of the applicable standard of care proximately caused Decedent's death. The Court has heard oral arguments and considered memoranda submitted by the parties on this matter, as well as the evidence adduced by the parties.

A motion to set aside the verdict is appropriate when there is insufficient evidence to support the verdict, such that the jury could not have reached the verdict based upon consideration of the evidence and instructions. Va. Code § 8.01-430; *Gabbard v. Knight*, 202 Va. 40, 43, 116 S.E.2d 73 (1960); *see Baird v. Dodson Bros. Exterminating*, 217 Va. 745, 232 S.E.2d 770 (1977). The trial judge does not substitute his own judgment for that of the jury, and he examines the evidence in its entirety for evidence to support the jury's verdict. *See Carter v. Lambert*, 246 Va. 309, 313-14, 435 S.E.2d 403, 405-06 (1993); *Fedele v. National Liberty Ins. Co. of Am.*, 184 Va. 528, 534, 35 S.E.2d 766, 769 (1945).

In a medical malpractice case, the plaintiff must show, by a preponderance of the evidence that, not only was the applicable standard of care breached, but also that the breach was a proximate cause of the injury. *See Bryan v. Burt*, 254 Va. 28, 34, 486 S.E.2d 536, 539-401 (1997). The plaintiff in the instant case presented sufficient evidence from which the jury could reasonably infer that Cardiovascular Associates breached its standard of care by not providing the proper response to Auer's phone contact with their office regarding the Decedent's post-surgical complaints. The sole question before the Court, therefore, is whether Auer has presented sufficient evidence to support a finding of proximate cause.

In a medical malpractice death case, the plaintiff need not prove the patient's survival absent physician's negligence to a certainty. *Brown v. Koulizakis*, 229 Va. 524, 532, 331 S.E.2d 440, 446 (1985). However, "if a defendant physician, by action or inaction, has destroyed a substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death." *Id.* The Supreme Court of Virginia, commenting on medical malpractice cases where proximate cause was properly a jury issue, noted that the plaintiff in those cases presented testimony regarding both the nature of alternative treatment the deceased patient could have undergone, and "the probability that such treatment would have extended the decedent's life." *Bryan v. Burt*, 254 Va. 28, 35, 486 S.E.2d 536, 540 (1997) (using as illustration *Hadeed v. Medic-24*, 237 Va. 277, 377 S.E.2d 589 (1989); *Brown*, 229 Va. at 532, 331 S.E.2d at 446; *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va. 176, 169 S.E.2d 563 (1969)).

The Court notes that the "substantial possibility of survival" standard is one for the Court's use in determining whether to strike the plaintiff's

evidence, not for use by the jury in deciding the issue of proximate cause. *Blondel v. Hays*, 241 Va. 467, 473-74, 403 S.E.2d 340, 344 (1991). As such, the Court in the present case utilizes this standard in evaluating if there was sufficient evidence with which the case could have gone to the jury and upon which the jury could have based its decision.

The Fourth Circuit Court of Appeals, interpreting Virginia law, wrote persuasively that "Virginia law applies the traditional standard of proximate cause and that requiring a plaintiff to prove destruction of a 'substantial possibility of survival' is equivalent to requiring the plaintiff to prove that it is 'more likely than not' that the decedent would have survived in the absence of the defendant's negligence." *Murray v. United States*, 215 F.3d 460, 463 (2000). Thus, while the Supreme Court of Virginia has made clear that a plaintiff does not have the burden of proving to a certainty that a deceased patient would have survived absent physician's negligence, the "substantial possibility of survival" standard does not lower the plaintiff's burden of proving proximate cause.

Decedent underwent surgery on May 15, 2001, on which date, Dr. Baker ordered a culture and sensitivity on the removed valve. Argument over what this report may have shown or what action should have been taken on it is irrelevant to the current issue. Decedent was discharged from Sentara Norfolk General Hospital on May 23, 2001. Between May 23rd and May 29th, there were various contacts made between the Auers and Dr. Baker and his office, Mid-Atlantic Cardiothoracic Surgeons, Ltd., arising from the Decedent's complaints, including pain and fever. Auer, still concerned about her husband, the Decedent, after contacting Dr. Baker's office, first contacted Dr. Miller's office, Cardiovascular Associates, on May 30, 2001. Testimony was given by Auer that she contacted Cardiovascular Associates on more than one occasion and that she was not given access to Dr. Miller or another doctor within the practice. Instead, according to Auer, she was referred back to the surgeon, Dr. Baker, and his office for post-operative complaints. On June 3, 2001, Decedent was admitted to Sentara Norfolk General Hospital. He was subsequently diagnosed with endocarditis and treatment was initiated. Treatment, however, was ineffective, according to trial testimony due to the progress of the infection, and Decedent died on June 5, 2001.

The parties presented testimony over the course of one week, and the Court does not attempt to restate all relevant portions of the evidence. The Court has extensively reviewed the testimony of Auer's expert witnesses, as transcribed, on which she must rely to prove proximate cause. Auer presented clear expert testimony through Donald E. Craven, M.D., to a reasonable degree of medical certainty, that as of June 3, 2001, upon

admission to the hospital, Decedent's opportunity for cure was lost. Dr. Craven also testified that, as a general principle, which could be applied in the case of the Decedent, earlier appropriate treatment improves outcomes. Dr. Craven was able to testify that "if he [the Decedent] would have been seen and started on therapy on the 29th, the outcome would have been better, although I cannot say 100 percent." (Tr. p. 122, ll. 5-7.) Dr. Bojar, also an expert witness for Auer, whose testimony was presented to the jury via a de bene esse deposition, testified about Decedent's chances of survival only in terms of if the Decedent had received antibiotic treatment "appropriately at an earlier phase" (Tr. p. 80) and "earlier rather than later" (Tr. p. 87). Richard Friedlander, M.D., offered testimony that he could not "say with certainty that identification and treatment on the 30th would have prevented his [the Decedent's] death. It certainly would have improved his chances of surviving as compared to making the diagnosis on the 3rd." (Tr. p. 229, ll. 4-8.)

The combined testimony of Auer's expert witnesses does seem to indicate that diagnosis and treatment on May 30, 2001, would have been better for the Decedent than diagnosis and treatment on June 3, 2001. However, even the combined testimony of these witnesses does not establish that, had Dr. Miller's group responded appropriately according to the standard of care, assuming arguendo that would have included diagnosis and treatment, Decedent would have had a substantially better possibility of survival. Which is to say, the evidence presented by Auer's expert witnesses does not establish that it is more likely than not that Decedent would have survived absent the negligence of Cardiovascular Associates. Auer's expert witness testimony establishes that treatment on May 30, 2001, would have been better for the Decedent than treatment on June 3, 2001, at which point, by Auer's own expert's testimony, treatment could not save the Decedent. This testimony is not the same as, and does not allow for the assumption or inference that, diagnosis and treatment five days prior to such hopeless treatment would have resulted in a substantial possibility of Decedent's survival.

Auer argues that she need not prove a substantial possibility of survival as of any particular date to bear her burden. While this proposition may apply in certain contexts, it cannot apply practically to her cause of action against Cardiovascular Associates. It is not enough to say that, from the period beginning May 23, 2001, and ending June 3, 2001, the Decedent's chances of survival diminished each day or that treatment earlier on that timeline would have been better than later. There are no alleged breaches of the standard of care by Cardiovascular Associates before May 30, 2001, as that was the first date on which they were contacted by Auer regarding her

husband's complications. Clearly, in this context, Auer must be able to present expert testimony to support the proposition that the Decedent had at least a substantial possibility of survival on May 30, 2001, and was deprived of it by the negligence of Cardiovascular Associates. There was no adequate testimony to meet this burden.

For these reasons, there was insufficient evidence upon which to submit the issue of proximate cause as it relates to Cardiovascular Associates to the jury, and the jury verdict against Cardiovascular Associates in the amount of $200,000.00 is set aside.